## Kronk, Appellant, *v*. West Penn Power Company.

Argued March 21, 1966.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Henry E. Shaw,* with him *A. C. Scales,* and *Scales and Shaw,* for appellants.

*B. Patrick Costello,* with him *Robert W. Smith, Jr.,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, September 27, 1966:

Appellant instituted an action of trespass against West Penn Power Company to recover damages for personal injuries.   West Penn brought in appellant's employer Glunt as an additional defendant.   At the trial of the case the trial Judge entered a compulsory nonsuit in favor of each defendant, which the Court en banc refused to remove.   Following entry of judgment of nonsuit and the Order dismissing the motions to remove the nonsuits, plaintiff appealed.

The residence of a man named Stahl is located in a rural area of Westmoreland County where water is supplied by private wells.  Stahl employed Glunt, a well

digger, to drill a well on his (Stahl's) property. On July 23, 1959, in daylight, appellant and two other employees of Glunt went to the Stahl property for the purpose of locating the spot where a well should be drilled. They remained on the premises for fifteen to thirty minutes. The point for drilling was located by the use of the fork of a tree as a divining rod. Thereafter a stake was planted for later identification of the spot.

This spot was directly under the southerly of two overhead lines owned and operated by West Penn which were strung in an east-west direction across the Stahl property. The two lines are 7.2 feet apart. The northerly line is dead, but power is conveyed through the southerly line. These lines, which were erected in 1940, are suspended from poles which are 480 feet apart. The pole to which the southerly line is attached is about 75 feet west of the spot where the well was to be drilled. The lines are suspended at a distance of *at least 30 feet from the ground.*

On July 24, 1959, the day after appellant's first visit to the Stahl property, he and a fellow employee named Baughman arrived there around noontime. Each was driving a vehicle, the appellant a so-called drilling rig and Baughman a helper's truck.

The drilling rig consisted of a truck at the rear end to which a so-called mast was attached. The mast was connected to the truck by an elevating apparatus. When the truck was moved from place to place, the mast was carried in a horizontal position on the floor of the rig. When the mast was to be put in use, it was raised to a vertical position by use of an elevating mechanism. When the mast was fully elevated, it could be raised to a height of approximately 39 feet above the ground.

After some preliminaries, appellant went to the control levers and started to raise the mast. He continued to do so until the mast made contact with the power

line. This caused a flow of 4,600 volts of electricity through his body, as the electricity passed from the power line on its way to the ground.

Appellant contends defendant was negligent (1) in locating, designing, constructing and maintaining this power line, and (2) in failing to post signs warning the public of the danger of electricity conveyed by one of the power lines.

There was no evidence whatsoever that West Penn was ever notified that Glunt or any of his employees, or anybody, would or might try to erect a drilling mast here or anywhere near West Penn's power lines. So long as no person or object touched these lines they were a danger to no one. Appellant produced an expert witness who stated, inter alia, that the power lines were strung too close to the Stahl house. Such testimony was of no aid to plaintiff because the cause of the accident was not the proximity of the power line (12 feet laterally) from the Stahl house. The expert witness also thought the power lines should have been rigged further above the ground. We agree with the Court below that the power company had no obligation to erect facilities in a rural area high enough above the ground to have rendered impossible the accident which occurred or to anticipate plaintiff's actions.

On this point, what the Court said in *Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1 (14-15), 130 A. 2d 123, is particularly pertinent and controlling: " '. . . What was said in Reed v. Duquesne Light Co., 354 Pa. 325, 330, 331, is directly applicable to the facts of the instant case. "To hold, in such circumstances, that the Light Company had reason to know that cranes were being used in the locality of the power lines would be tantamount to imposing upon the Light Company a duty to keep the land underneath the lines under constant surveillance. And, such was not the Light Company's duty."

" 'In the erection of its poles and wires, Metropolitan was bound to anticipate only such combination of circumstances, and accidents and injuries therefrom, as it may reasonably forecast as likely to happen: Mirnek v. West Penn Power Co., 279 Pa. 188, 191. "In Pennsylvania, liability for negligence depends on the antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury imputed to the defendant is such that a person of ordinary intelligence would have foreseen it as the natural and probable outcome of his conduct:" Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408, 413; see also Matlack v. Penna. Power & Light Co., supra, 210.

" '. . . What was said in Mirnek v. West Penn Power Co., supra, at page 191, is apposite to the facts of the instant case,—"If the present complaint had been of a defect in the poles or wires, arising from the manner of construction, or because of an observable deterioration or one arising from lapse of time, liability might be predicated thereon, if injury resulted from such negligence. But where, as here, that which had been safe, became harmful only by reason of the action of a third party, which defendant was not required to anticipate, and a sufficient time had not elapsed to charge it with constructive notice of this particular kind of dangerous condition, actual notice is required, for a defendant is not obliged to seek for defects of this character, or to assume they may arise." See also Reed v. Duquesne Light Co., supra, and Durinzi, Admr. v. West Penn Power Co., supra.' "

Plaintiff relies upon *Skoda v. West Penn Power Co.*, 411 Pa. 323, 191 A. 2d 822, and *Brillhart v. Edison Light & Power Co.*, 368 Pa. 307, 82 A. 2d 44, in each of which a recovery was allowed. These cases are clearly distinguishable on their facts.

The judgment must be sustained for another reason, namely, the obvious contributory negligence of the plaintiff. Plaintiff testified that he drove the drilling rig under the wires when approaching the drill site, but attempted to avoid his contributory negligence by repeated statements that he looked all around him but never saw the power lines which were somewhat obscured by trees. However, it is clear that he could easily have seen the power lines if he had looked overhead before or while raising the mast, and, we repeat, *he admitted he did not look overhead during this operation or at any other time.* Under these facts and circumstances, plaintiff's elevation of the mast without looking overhead, particularly when the lines would have been plainly visible if he had looked, was contributory negligence per se.

We have considered all the other contentions of the appellant but find no merit in any of them.

Judgment affirmed.

Mr. Justice JONES, Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice MUSMANNO dissents.