554 A.2d 96

John MATHIS and Elaine Mathis, h/w, Appellees,

v.

UNITED ENGINEERS & CONSTRUCTORS, INC., Appellee.

Appeal of PHILADELPHIA ELECTRIC COMPANY.

John MATHIS and Elaine Mathis, h/w, Appellees,

v.

UNITED ENGINEERS AND CONSTRUCTORS, INC., Appellant.

John MATHIS and Elaine Mathis, h/w, Appellees,

v.

PHILADELPHIA ELECTRIC COMPANY, Appellant.

John MATHIS and Elaine Mathis, h/w, Appellees,

v.

PHILADELPHIA ELECTRIC COMPANY, Appellee.

Appeal of UNITED ENGINEERS AND CONSTRUCTORS, INC.

Superior Court of Pennsylvania.

Argued May 12, 1988.
Filed Feb. 10, 1989.

James D. Coleman, Philadelphia, for Philadelphia Elec. Co., appellant (at Nos. 3496 and 3497).

Harry A. Short, Jr., Philadelphia, for United Engineers, appellant (at Nos. 75 and 76).

Joseph Lurie, Philadelphia, for Mathis, appellees.

Before BECK, TAMILIA and JOHNSON, JJ.

BECK, Judge:

In this case, we consider consolidated appeals by the Philadelphia Electric Company (PECO) and by United Engineers and Constructors, Inc. (UE & C) from a judgment entered following a jury verdict in favor of plaintiff-appellees John and Elaine Mathis.

John Mathis is a laborer who was assigned by his employer, Henkels and McCoy, Inc., to perform maintenance work at the Eddystone Plant, an electric generating station which is owned and operated by PECO. On May 5, 1981, while John Mathis was dismantling a scaffold which had been erected on a grated catwalk, a portion of the catwalk collapsed beneath his feet. Mathis fell twenty-five feet and sustained serious injuries. He and his wife Elaine initially filed suit against PECO for negligently maintaining the catwalk. The Mathises later brought a separate suit against UE & C, the manufacturer of the catwalk, based on the theory that UE & C had designed and installed the catwalk in a negligent manner. The two suits were consolidated and were tried before a jury in the Court of Common Pleas of Philadelphia County. On May 29, 1986, the jury returned a verdict finding PECO 70% negligent and finding UE & C 30% negligent. The jury awarded John Mathis $161,000 for pain and suffering, loss of earnings, and loss of future earning capacity, and awarded Elaine Mathis $17,000 for loss of consortium.

Both defendants filed timely post-trial motions which were denied. Plaintiffs moved for the award of delay damages pursuant to Pennsylvania Rule of Civil Procedure

238. On November 19, 1982, the court issued an order entering judgment in favor of the Mathises and assessing total delay damages of over $67,000. From this final order, UE & C and PECO filed timely appeals.

Counsel for UE & C contends that UE & C is entitled to judgment n.o.v. on the grounds that the company did not breach any duty to the plaintiffs and that UE & C's actions were not the proximate cause of John Mathis' injury. In the alternative, counsel for UE & C also argues that the trial court erred: 1) by failing to mold the verdict by ordering PECO to indemnify UE & C; 2) by failing to strike the testimony of plaintiffs' expert witness on catwalk design; 3) by charging the jury in accordance with the principles of causation set forth in section 447 of the Restatement (Second) of Torts; and 4) by assessing delay damages. After careful consideration, we grant judgment n.o.v. for UE & C. Accordingly, we need not consider UE & C's remaining allegations of error.

Counsel for PECO contends that the electric company is immune from suit under the provisions of the Pennsylvania Workmen's Compensation Act. In the alternative, counsel for PECO argues that the trial court erred: 1) by refusing to submit to the jury the issue of whether UE & C is liable to indemnify PECO; 2) by allowing the jury to consider the testimony of plaintiff's expert witness on damages for loss of earning capacity; and 3) by assessing delay damages. We find that PECO is not immune from suit and is not entitled to either indemnity from UE & C or a new trial. PECO is therefore liable for the full amount of the verdict awarded by the jury. However, we must remand for a recalculation of delay damages.

## I. UE & C's Appeal

We first consider UE & C's claim that the evidence was insufficient to establish that UE & C was negligent. Since UE & C appeals from the denial of a motion for judgment n.o.v., we must view all of the evidence, together with all of the reasonable inferences therefrom, in the light most favorable to appellees as verdict winners. *Tua v. Brentwood*

*Motor Coach Company,* 371 Pa. 570, 572, 92 A.2d 209, 210 (1952); *Olson v. Dietz,* 347 Pa.Super. 1, 6–8, 500 A.2d 125, 129 (1985). We find that UE & C cannot be held legally responsible for the accident at the Eddystone Plant.

The facts relating to the collapse of the catwalk are as follows. In 1972, PECO entered into a contract with UE & C for the construction of waste water facilities on the premises of the Eddystone Plant. Pursuant to the contract, UE & C was required to design, construct and install a catwalk which would encircle a waste water holding tank at an elevation of twenty-five feet. Both PECO and UE & C were aware that the catwalk would block an access door on the side of the tank which needed to be opened once every few years so that the tank could be cleaned. In order to address this problem, UE & C selected a structural design which would enable PECO to dismantle the portion of the catwalk closest to the access door. UE & C erected a catwalk which consisted of metal grates that were tack-welded to underlying structural supports. This design permitted PECO to gain entrance to the tank by burning through the tackwelds and lifting off the metal grates. PECO approved the design, and never notified UE & C of any problem with how the catwalk was constructed.

In 1978, PECO ordered its employees to remove three grates immediately adjacent to the side of the tank and raise the access door. A welder, with the assistance of a machinist, riggers, and helpers, used an oxygen acetylene torch to melt all of the tackwelds on the grating. William MacGregor, the former head of PECO's maintenance department, testified at trial that the workers were never instructed to rewed the grates to the supports after the tank had been serviced. MacGregor said that he had simply assumed that the workers would properly reassemble the catwalk.

In 1980, the same process was repeated. PECO employees were directed to open the access door, but the maintenance department did not instruct anyone to restore the welds. The maintenance department also failed to conduct

any subsequent inspection to ensure that the structure was in good condition.

On May 5, 1981, the three grates adjacent to the side of the tank slipped out from beneath John Mathis causing him to fall and injure his back. William Mustard, an accident investigator employed by PECO, arrived on the scene and determined that the displaced grates had never been rewelded. Mustard testified that after the welds were removed, the position of the grates had shifted until they no longer rested on their structural supports. Mustard described the condition created by the removal of the welds as an obvious hazard, but he noted that the hazard was apparently not recognized by the PECO craftsmen who left the grates unwelded. PECO had a safety education program for the work force but did not include in this program any instruction on proper catwalk maintenance.

Under these circumstances, there can be little doubt that PECO's negligent maintenance of the catwalk was the direct cause of John Mathis' injury. The question on appeal, however, is not whether PECO was negligent but whether UE & C was negligent. Appellees' theory at trial was that UE & C breached a duty of care owed to workers at the Eddystone Plant by designing a catwalk which could become unstable if PECO did not take necessary safety precautions.[1] In support of this position, appellees called as an expert witness George Rago, a construction safety specialist. Rago testified that UE & C could have avoided the accident by installing hinged grates that would swing open whenever workers needed to enter the tank's access door. Appellees therefore assert that by securing the grates with tackwelds rather than hinges, UE & C created an unreasonable risk that PECO would remove the tackwelds and would never replace them.

UE & C argued that hinged grates are *more dangerous* than welded grates because a worker may fall through a

---

1. Appellees do not assert that UE & C was strictly liable for supplying a defective catwalk or that UE & C negligently failed to warn PECO of any danger inherent in the catwalk.

catwalk if a hinged grate is inadvertently left open. However, we need not determine whether hinged grates or welded grates are the optimum catwalk design. The central issue in this case is not whether UE & C built the safest possible catwalk but whether UE & C negligently constructed an unreasonably dangerous catwalk. This in turn depends upon whether UE & C should have been expected to anticipate that PECO would leave the grates unwelded.

A company which manufactures and erects a structure owes a duty of care to people who must work in the vicinity of that structure. *Foley v. Pittsburgh–Des Moines Co.*, 363 Pa. 1, 68 A.2d 517 (1949). This duty includes an obligation to design the structure in such a way that it will not be rendered unsafe because of the foreseeable actions of a third party. *Smith v. Hobart Manufacturing Company*, 302 F.2d 570, 573 (3rd Cir.1962). *See generally* Restatement (Second) of Torts § 302 (1965) (negligent act or omission may involve an unreasonable risk of harm to another through the foreseeable action of a third person.) However, the wrongful actions of a third party are not deemed to be foreseeable simply because the defendant could have speculated that they might conceivably occur. "Want of ordinary care consists in failure to anticipate what is reasonably probable—not what is remotely possible." *Tua v. Brentwood Motor Coach Company*, 371 Pa. at 575, 92 A.2d at 211 (1952). *See, e.g., Kronk v. West Penn Power Co.*, 422 Pa. 458, 462, 222 A.2d 720, 721–22 (1966); *Jowett v. Pa. Power Co.*, 383 Pa. 330, 335, 118 A.2d 452, 455 (1955); *Scurfield v. Federal Lab., Inc.*, 335 Pa. 145, 150, 6 A.2d 559, 561 (1939); *Jamison v. City of Philadelphia*, 355 Pa.Super. 376, 380–82, 513 A.2d 479, 481 (1986).

Although we are not aware of any Pennsylvania court decision which concerns a negligence suit against a manufacturer for failing to prevent the removal of a safety devise, the Third Circuit addressed this issue in *Smith v. Hobart Manufacturing Company, supra.* In *Smith*, the plaintiff mangled his hand when he slipped while feeding meat into an electrically powered grinding machine. The

machine had been delivered to plaintiff's employer with a hand guard blocking the revolving blade, but a supervisor removed the guard so that larger pieces of meat could be cut and production thereby increased. Plaintiff argued that the manufacturer had a duty to secure the guard so that it would have been more difficult for the supervisor to detach. In a decision applying Pennsylvania law, the Third Circuit concluded that the manufacturer could not foresee that the grinder would be operated without a guard, and that plaintiff's theory of liability should not have been submitted to the jury.

In the instant case, appellees claim that the accident was foreseeable because UE & C knew that PECO would someday remove the tackwelds. We find, however, UE & C was not on notice that the welds would be removed *and then never replaced.* Appellees did not present evidence that UE & C was aware or should have been aware of any history of safety violations on PECO's part. Nor did appellees present evidence that UE & C or any other manufacturer had ever constructed a catwalk which later had been disassembled and not rewelded. *Compare Lambert v. PBI Industries,* 244 Pa.Super. 118, 366 A.2d 944 (1976) (manufacturer should anticipate uses of product which are usual and customary in the industry).

The accident was the result of exceptionally careless acts which occurred many years after UE & C had relinquished control of the catwalk to PECO. The supervisor of PECO's maintenance department ordered a team of craftsmen to remove the welds but never bothered to make arrangements for the grates to be rewelded. PECO employees then stacked the unwelded grates on top of their structural supports creating an obvious hazard. Finally, PECO failed to conduct any subsequent safety inspection for a period of months or perhaps years. Under all of the circumstances, we conclude as a matter of law that UE & C was not negligent for failing to anticipate PECO's misconduct.

In reaching this conclusion, we also bear in mind that weld removal was not a routine part of the maintenance of

the waste water tank. At trial, the engineer who designed the catwalk testified that he had been told that the tank would be cleaned only once every two years or less often. The evidence of record shows only that the tank was cleaned twice—once in 1978 and once in 1980. Appellees' position would be stronger if they had been able to demonstrate that UE & C had reason to expect that PECO would remove the catwalk grates once a week or once a month. As it was, the frequency of the tank cleaning program was not sufficient to indicate that sooner or later the welds might not be restored.

The evidence presented at trial was insufficient to prove that UE & C created a foreseeable danger by designing a tackwelded catwalk.[2] Accordingly, we grant judgment n.o.v. in favor of UE & C.

## II. PECO's Appeal

PECO does not deny its negligence but instead contends that it is immune from suit under the Pennsylvania Workmen's Compensation Act. Pa.Stat.Ann. tit. 77, §§ 1–1601 (Purdon 1952 & Supp.1988). The Act grants employees the right to a fixed level of compensation for work-related injuries and, in return, exempts their employers from common law liability for negligence. *See generally McGinn v. Valloti*, 363 Pa.Super. 88, 525 A.2d 732 (1987). The central question on appeal is whether PECO qualifies as the employer of John Mathis under the statute. Viewing the facts in the light most favorable to the verdict winners, we find that PECO was not John Mathis' employer and was therefore subject to suit.

Mathis was hired as a laborer by Henkels and McCoy, Inc. (Henkels). Henkels had entered into a contract with PECO in which it agreed to furnish laborers to perform

**2.** Appellees also claim that UE & C was negligent for building the catwalk with grates which did not fit more snugly onto the underlying structural supports. However, the record does not indicate that the fit between the component parts of the catwalk posed any danger as long as the grates and supports were welded together. Since UE & C could not foresee the removal and nonreplacement of the tackwelds, UE & C did not have a duty to build grates with a tighter fit.

maintenance work at the Eddystone Plant. Henkels paid the laborers, and provided supervisors to oversee the performance of their duties. Henkels also retained ultimate authority to discharge laborers. PECO informed the Henkels supervisors of what work needed to be done, reimbursed Henkels for the cost of wages, benefits, taxes, and insurance, and supplied the laborers with tools.

John Mathis reported for work every day at the Eddystone Plant. The work consisted of general maintenance, such as removing debris and sweeping floors, as well as more complex tasks, such as dismantling scaffolds. Mathis testified that he received all instructions concerning which tasks to do and how to do them from Samuel Mench and Joshua Whitaker, two Henkels foremen. Mench and Whitaker received general directions from Leon Yacyshyn, a PECO manager who did not ordinarily communicate directly with individual laborers. On May 5, 1981, Whitaker assigned Mathis to a crew of Henkels laborers and ordered the crew to tear down scaffolding which had been erected above the UE & C catwalk. At the time that Mathis fell through the catwalk, Yacyshyn was not present at the plant.

■ PECO first argues that even assuming that Henkels actually employed Mathis, PECO was the "statutory employer" of Mathis under section 52 of the Workmen's Compensation Act.[3] Under section 52, the employees of a subcontractor are sometimes deemed to be employees of a principal contractor for workmen's compensation purposes. PECO, however, is not a principal contractor but is instead the owner and operator of the Eddystone Plant. As such, PECO is not eligible for statutory employer status.

3. Section 52 provides:
 An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable [for workmen's compensation benefits] to such laborer or assistant in the same manner and to the same extent as to his own employe.
 Tit. 77 § 52 (Purdon 1952).

In *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), the Pennsylvania Supreme Court held that the statutory employer doctrine does not apply unless five elements are present. These are:

(1) An employer who is under contract with an owner or one in the position of an owner.

(2) Premises occupied by or under the control of such employer.

(3) A subcontract made by such employer.

(4) Part of the employer's regular business entrusted to such subcontractor.

(5) An employee of such subcontractor.

302 Pa. at 294–95, 153 A. at 426 (1930). These requirements have been strictly construed by the appellate courts of Pennsylvania. *See, e.g., Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (1988); *Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987); *Zizza v. Dresher Mechanical Contractors*, 358 Pa.Super. 600, 518 A.2d 302 (1986) (en banc); *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894 (1967). PECO does not meet the first requirement since PECO *is an owner*—not an employer under contract with a separate entity that is an owner or one in the position of an owner.

PECO emphasizes that the job which Mathis performed was an essential part of the day to day operations of its electric power plant. We recognize that PECO controlled the premises of the plant and that PECO entrusted part of its regular business operations at the plant to Henkels, Mathis' direct employer. This information is relevant to the second and fourth of the *McDonald* requirements but is not sufficient to create the relationship of statutory employer between PECO and Mathis.

In the *McDonald* case, the Levinson Steel Company hired Uhl, another steel company, to construct a steel crane shed for Levinson on property which Levinson had leased. Levinson asserted that it was the statutory employer of an injured worker that Uhl had hired. In rejecting this claim, the Supreme Court specifically noted:

We may concede that the regular business of Levinson was constructing similar work for others, and he was an employer to his own employees. Further the work was done on premises leased by him. However, the work under which the accident took place was that let to a independent contractor by Levinson as lessee-owner. *Merely because the work is on his own property and is done in the course of his regular business does not bring him within the act.* There must be a relation of principal contractor and subcontractor under him, and Levinson must be such principal contractor.

302 Pa. at 295, 153 A. at 426–27 (citations omitted) (emphasis added). In this case, PECO stands in the shoes of Levinson and Henkels stands in the shoes of Uhl. We therefore find that PECO cannot qualify under section 52 of the Workmen's Compensation Act as Mathis' statutory employer.

 PECO also argues that it should be recognized as Mathis' employer for workmen's compensation purposes by virtue of the "borrowed employee" doctrine. This doctrine is an outgrowth of the common law rule that a servant who is loaned by his master to a third party is regarded as the servant of that third party while under that third party's direction and control. *See Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 313–14, 448 A.2d 1054, 1058 (1982). In order to come within the scope of the doctrine, the borrowing employer must control or have the right to control the borrowed employee with regard to both the work to be done and the manner of performing it. *Martin v. Recker*, 380 Pa.Super. 527, 535, 552 A.2d 668, 672 (1988); *English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981). At trial, PECO alleged that Henkels loaned Mathis to its maintenance department and that Mathis was wholly subject to the authority of its maintenance department.[4] The court referred the question of PECO's authori-

4. In the original answer and new matter which PECO filed in response to plaintiffs' complaint, PECO asserted that it was Mathis' statutory employer, but PECO did not specifically allege that it was a borrowing employer. UE & C claimed that PECO thereby waived the

ty to the trial jury. In response to a special interrogatory, the jury found that that the maintenance department did not control or have a right to control Mathis.

[8] PECO maintains that under *Venezia v. Philadelphia Electric Co.*, 317 Pa. 557, 177 A. 25 (1935), the borrowed employee issue should have been resolved in its favor as a matter of law. We disagree. In *Venezia*, the plaintiff was injured while digging ditches for PECO pursuant to a contract between PECO and his direct employer, Anthony Tinaglia. Plaintiff testified that he worked under two supervisors: a foreman provided by Tinaglia who told him which job to go to and checked his attendance, and a foreman provided by PECO who actually directed his work. The Supreme Court found that PECO was the plaintiff's true employer since it was clear from the plaintiff's own testimony that PECO controlled the manner in which he performed his work. On the other hand, Mathis testified that he received work instructions from the foremen provided by Henkels, and not from PECO supervisors. Accordingly, the jury was free to conclude that Henkels actually controlled Mathis, and that PECO was therefore not immune from suit as a borrowing employer.

PECO also asserts that the testimony of the two Henkels foremen, Whitaker and Mench, clearly established that PECO had reserved the right to control Mathis' work. We find that this testimony was ambiguous. Whitaker testified that he had disagreements with Leon Yacyshyn, the PECO supervisor, about how the work should be done, and that sometimes he would prevail and sometimes Yacyshyn would prevail. When asked on cross-examination if Yacyshyn was

borrowed employee defense, but the trial judge correctly rejected this waiver argument. In *English v. Lehigh County Authority, supra,* this court held that by referring to the statutory employer doctrine in its answer, the defendant employer preserved the closely related issue of whether it was entitled to Workmen's Compensation Act immunity by operation of the borrowed employee doctrine. Moreover, in *LeFlar v. Gulf Creek Industrial Park No. 2,* 511 Pa. 574, 515 A.2d 875 (1986), the Supreme Court held that the question of whether a defendant is immune from suit under the Workmen's Compensation Act is a non-waivable jurisdictional issue.

"the boss", he replied "I guess he was." R.R. at 657a. Mench said that Yacyshyn rarely ventured forth from his office, but he conceded on cross-examination that Yacyshyn would have had authority to tell the Henkels laborers "Don't sweep there; sweep there . . . or that sort of thing." R.R. at 857a. Neither Whitaker nor Mench ever stated that Yacyshyn had authority to direct the precise manner in which laborers carried out more complex tasks—such as dismantling a scaffold.

When the evidence could reasonably give rise to contrary inferences as to the scope and extent of an employer's control, the question is for the jury. *See Mature v. Angelo*, 373 Pa. 593, 598, 97 A.2d 59, 61–62 (1953). Since the jury found that PECO did not have the right to control the manner in which Mathis did his work, the trial court properly concluded that PECO could not claim immunity as an employer under the Workmen's Compensation Act.

PECO next alleges that the trial court erred by refusing to submit to the jury the question of whether UE & C must indemnify PECO. Since we determined in section I of this opinion that UE & C is entitled to judgment n.o.v., this claim is clearly without merit.

■ PECO next alleges that the trial court improperly admitted expert testimony on damages for loss of future earning capacity. Before the catwalk accident, Mathis' duties included lifting heavy objects and performing other strenuous manual labor. After the accident, he resumed work for the Henkels Company at the Eddystone Plant, and he continued to receive the union wage of $13.60 per hour. However, his physician stated in a deposition that was introduced into evidence that Mathis could only perform light janitorial work because of his back injury. At trial, plaintiffs called Dr. Robert Wolf, a specialist in vocational rehabilitation, who testified that as a result of the injury, the value of Mathis' services in the job market had declined from $13.60 per hour to $5.00 per hour. PECO objected to this testimony as misleading and unduly speculative, espe-

cially in light of the fact that Mathis had kept his old job and had not suffered any actual reduction in his wages.

In *DiCiacchio v. Rockcraft Stone Products Company,* the Pennsylvania Supreme Court explained that when assessing loss of earning capacity:

> The test is not exclusively a comparison of before-and-after figures, but a determination as to whether, because of the injuries, the injured man's economic horizon has been shortened.... A tortfeasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person, the wages of the injured person following the accident are as high or even higher than they were prior to the accident. Parity of wages may show lack of impairment of earning power if it confirms other physical data that the injured person has completely recovered. Standing alone, however, parity of wages is inconclusive.

424 Pa. 77, 82, 225 A.2d 913, 915 (1967) (lead opinion). *See also Christides v. Little,* 274 Pa.Super. 343, 418 A.2d 438 (1980); *Wright v. Engle,* 256 Pa.Super. 321, 389 A.2d 1144 (1978).

The case sub judice is analogous to *Gary v. Mankamyer,* 485 Pa. 525, 403 A.2d 87 (1979). The plaintiff in *Gary* was a nurse whose injury prevented her from continuing to lift and move patients. Although she was allowed to return to her former position, she established that she was permanently disabled and that she would not have been able to secure a job as a nurse at another hospital. The Court held that "[s]uch evidence, on the basis of which a reasonable jury could reasonably infer appellant's physical inability to continue work as a practical nurse, also forms an adequate predicate for the challenged testimony of the actuarial expert who calculated appellant's projected future loss of earnings based on an assumption of total loss of earning capacity." 485 Pa. at 529–30, 403 A.2d at 89–90. In the instant case, the jury could have concluded that Mathis was no longer capable of working as an all purpose laborer and that he would not be able to secure another position at union wage if he lost his job with Henkels. We find that

the testimony of Dr. Wolf was admissible, and we further note that PECO had ample opportunity to cross-examine Dr. Wolf as to any aspect of his testimony that was arguably misleading.

Finally, PECO asserts that the trial court erred by awarding delay damages pursuant to Pennsylvania Rule of Civil Procedure 238.[5] On November 7, 1988, while this case was pending on appeal, the Pennsylvania Supreme Court rescinded the original Rule 238 and promulgated a new Rule 238 effective immediately. In *Ceresini v. Valley View Trailer Park*, 380 Pa.Super. 416, 552 A.2d 258 (1988), an en banc panel of this court found that new Rule 238 applied to an action in which a properly preserved challenge to the assessment of delay damages was pending in the Superior Court as of the date of the promulgation of the new rule. In light of *Ceresini*, we remand for a recalculation of delay damages under new Rule 238.

We grant judgment n.o.v. to United Engineers and Constructors, Inc., and we remand for proceedings consistent with this opinion. Jurisdiction is relinquished.

---

5. PECO properly preserved this issue by specifically asserting in a timely post-trial motion filed on June 6, 1986 that the assessment of delay damages under Rule 238 would be unconstitutional. *See Craig v. Mcgee Memorial Rehabilitation Center*, 512 Pa. 60, 65–66, 515 A.2d 1350, 1353 (1986).