**Joan MAHAN, Appellee**

v.

**AM–GARD, INC., Appellant.**

**Joan Mahan**

v.

**Rodney Darvell Reed.**

Superior Court of Pennsylvania.

Argued Oct. 1, 2003.

Filed Dec. 24, 2003.

Reargument Denied March 2, 2004.

Louis C. Long, Pittsburgh, for appellant.

Allan M. Cox, Pittsburgh, Mahan, appellee.

Before: JOYCE, BENDER and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 Appellant Am–Gard, Inc., appeals the judgment entered in favor of Appellee Joan Mahan on October 5, 2001, in the Court of Common Pleas of Allegheny County. Following a jury trial, Appellant was found negligent in its hiring of Rodney Darvell Reed (Reed) as an unarmed security guard. Reed was assigned to guard the parking lot of Three Rivers Bank (the bank) on the evening of June 11, 1999. Three days later, during his off-hours, Reed shot and injured Appellee, then a teller at the bank, in the midst of a robbery. Upon review, we reverse.

¶ 2 The relevant facts and procedural history are as follows: On May 21, 1999, Reed interviewed with Appellant for a position as an unarmed security guard. Jaquelyn Tarr, a member of Am–Gard's human resources department, interviewed Reed. Ms. Tarr hired Reed on May 27, 1999, based in part on the fact that he had prior experience with the Cauley Detective Agency as an unarmed security guard.[1] Tarr did not verify Reed's previous employment or perform a criminal records check *before* hiring Reed as an unarmed security guard.[2]

¶ 3 Initially, Appellant assigned Reed to a security detail at Parkview Manor Apartments (Parkview Manor), in Duquesne, Pennsylvania. After working several shifts at Parkview Manor Apartments, Appellant placed Reed on temporary leave because a set of keys for Parkview Manor's laundry room were missing. Following a two-day investigation, it was deter-

---

1. While employed for Cauley Detective Agency, Reed was assigned to a security detail at Kaufmann's Department Store. Thereafter, Reed was assigned to guard a parking lot at Allegheny County Community College. The record indicates that Cauley Detective Agency terminated Reed for failure to report for duty without an excuse on May 4, 1999.

2. Appellant did request local and state criminal record checks for Reed on June 10, 1999, several days after Reed began to work for Appellant. The criminal record checks were returned to Appellant on June 14, 1999, and July 9, 1999, respectively. The criminal record checks indicated that Reed did not have a criminal record.

mined that Appellant was not responsible for misplacing, losing, or taking the keys.

¶ 4 On June 11, 1999, Reed arrived at Appellant's offices to pick up his paycheck, and he asked his superior, Jeffrey Middlemiss (Middlemiss), if there was a security detail available. Middlemiss indicated that work was available that evening, and he assigned Reed to guard the parking lot at the bank.[3] Reed's duty was to patrol the bank's parking lot and instruct drivers that they could not park in the lot for area baseball games. Reed's assignment did not require him to enter the bank.

¶ 5 Reed arrived at the bank attired in his work uniform, entered the bank, and introduced himself to several tellers, including Appellee, who was working at the teller window closest to the main entrance. Reed asked the tellers where his duty station was, and a teller responded that he was to be in the parking lot, not inside the bank itself. Reed then examined the bank's security cameras and asked if there was another guard. A teller told Reed that there was not another guard for the bank. After this exchange, Reed left the bank and went to his guard station in the parking lot.

¶ 6 The following Monday, June 14, 1999, at approximately 4:00 p.m., three men, one later identified as Reed, entered the bank armed and in disguise. As Appellee was waiting on a customer, Reed approached her with a weapon drawn and demanded that she put the cash she had in a bag. Appellee opened her cash drawer and attempted to give Reed the money, but she did not have a bag. Appellee attempted to communicate non-verbally to Reed that she did not have a bag.[4] After looking momentarily for a bag, Appellee glanced at Reed and the money on the counter. Reed grabbed the money from the counter with his right hand, showed it to Appellee, smirked, and shot her in the chest. Appellee fell to the ground screaming, and Reed fled the scene.

¶ 7 Appellee underwent emergency surgery and was hospitalized for eight days following the incident. Following her discharge, Appellee continued to suffer psychological trauma from the incident and was unable to work in a bank setting. Reed was eventually apprehended by federal authorities and charged with armed bank robbery and related offenses.

¶ 8 Appellee commenced this action against Appellant on September 30, 1999, via praecipe for a writ of summons. Thereafter, Appellee filed a complaint against Appellant on December 7, 1999, alleging that the injuries she suffered as a result of the shooting were the result of Appellant's failure to investigate Reed's criminal record and work record prior to hiring Reed as an unarmed security guard. Appellant responded to Appellee's complaint via an answer and new matter on January 10, 2000. Appellant's new matter requested dismissal of the suit because Reed was not operating within the scope of his employment when he robbed the bank on June 14th, and, therefore, Appellant contended that it could not be liable for Appellee's injuries. Appellee also commenced a separate action against Reed in March 2000, which, upon motion of Appellee, the trial court consolidated with the present action for purposes of joint hearing and trial on June 26, 2000.

¶ 9 In the midst of pre-trial pleadings, on June 9, 2000, Reed pleaded guilty to

---

3. Reed's shift at the bank's parking lot was from 4:30 p.m. until 7:30 p.m.

4. Appellee, like other tellers, was trained not to speak with a bank robber in the course of a robbery.

federal charges of armed bank robbery[5] and use of a firearm in relation to a crime of violence.[6] Reed was sentenced on September 7, 2000, to an aggregate sentence of ten years in federal prison. A default judgment was entered against Reed only in regards to liability on July 21, 2000.[7]

¶ 10 Following entry of default judgment against Reed, Appellant filed a motion for summary judgment on November 29, 2000, that alleged that it, in fact, performed criminal background checks on Reed that yielded no information with respect to Reed's violent nature. Further, Appellant contended that there was no causal link between Appellant's hiring of Reed and his subsequent criminal activity. The trial court denied Appellant's motion on February 20, 2001.

¶ 11 The case proceeded through pre-trial matters, and, on April 4, 2001, Appellee filed an amended complaint which, in addition to its previous allegations of negligence, argued Appellant was negligent *per se* in that it failed to conform to the fingerprinting and background check requirements of the Private Detective Act of 1953, 22 P.S. §§ 11–49, when it hired Reed. Appellee did not file a new answer to this allegation.[8] A jury trial was conducted from April 30, 2001, until May 11, 2001. At the conclusion of trial, the jury rendered a verdict in favor of Appellee and assessed damages against Appellant in the amount of $800,000.00. Appellant filed a timely motion for post-trial relief, and the trial court set a briefing schedule for the motion.

¶ 12 Thereafter, Appellee filed a motion for delay damages, and, on May 24, 2001, the trial court molded the verdict to include delay damages in the amount of $47,422.98. The total damage award was $847,422.98. Appellant's motion for post-trial relief was not addressed by the trial court within 120 days, and, accordingly, on September 21, 2001, Appellee filed a praecipe to record the judgment. However, Appellee's praecipe stated an incorrect dollar amount for the damage award. Therefore, Appellant filed a motion to amend the judgment to the proper damage award, which the trial court granted on October 5, 2001. Following entry of judgment, Appellant filed a timely notice of appeal to this Court on October 16, 2001. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) concise statement of matters on appeal, but the trial court did author an opinion in this case.[9]

¶ 13 Appellant raises the following questions for our review:

1. Whether the [trial] court erred in allowing evidence that [Appellant] violated the fingerprinting requirement of the [Private Detective Act] to serve as a basis for finding negligence *per se* and in permitting the jury to consider that violation to be a cause of any harm to [Appellee]?

2. Whether the [trial] court erred in failing to find that [Reed's] intervening criminal act was a superseding cause of [Appellee's] injuries?

3. Whether the [trial] court erred in allowing the jury to consider a cause of

---

5. 18 U.S.C. § 2113(d).

6. 18 U.S.C. § 924(c)(1).

7. Reed is not a party to this appeal.

8. Appellant was not required to deny this allegation specifically, as the allegation was merely a conclusion of law that did not re-quire a responsive pleading and, therefore, was deemed denied. *See* Pa.R.Civ.P. 1029(d).

9. The record reflects that the trial court utilized the arguments presented in the briefs filed by the parties regarding Appellant's motion for post-trial relief as the basis for its opinion.

action in negligence, based upon the alleged negligent hiring, supervision and retention of [Reed]?

4. Whether the [trial] court erred in excluding the relevant psychiatric testimony of Dr. Jonathan M. Himmelhoch, regarding the forseeability of [Reed's] criminal actions?

5. Whether the [trial] court erred in denying [Appellant's] motion *in limine* to exclude certain testimony of Karen Spencer, Monique Wynn and R. Paul McCauley by admitting irrelevant evidence or in admitting relevant but highly prejudicial evidence that had no direct relationship to Reed's propensity to [commit] violent crime?

6. Whether the [trial court] committed error by refusing [Appellant's] oral request for leave to argue to the jury the effects of joint and several liability?

Appellant's brief, at 2–3.[10]

¶ 14 Appellant first alleges that the trial court erred in admitting evidence that Appellant violated the Private Detective Act.[11] The admissibility of evidence is a question left to the sound discretion of the trial court, and, we, as an appellate court, will not overturn a trial court's evidentiary rulings unless the trial court abuses that discretion. *See Tucker v. Cmty. Med. Ctr.,* 2003 PA Super 356, at *22, 833 A.2d 217 (2003).

¶ 15 Appellant contends that the evidence admitted with respect to its alleged violation of the Private Detective Act was irrelevant and prejudicial. We disagree.

¶ 16 Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evi-

dence. *See* Pa.R.E. 403. Generally, all relevant evidence is admissible. However, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. *Id.* For this purpose, "prejudice" does not mean detrimental to a party's case, but, rather, an undue tendency to suggest a decision on an improper basis. *See Leahy v. McClain,* 732 A.2d 619, 625 (Pa.Super.1999). In the present case, Appellee was entitled to introduce evidence regarding Appellant's alleged violation of the Private Detective Act because that evidence was central to the exposition of Appellee's theory of liability, *i.e.,* negligence *per se.* Accordingly, the evidence was relevant and not unduly prejudicial. *See Leahy,* 732 A.2d at 625; *see also* Pa.R.E. 403. Therefore, the trial court did not err when it admitted the evidence. As such, Appellant's claim fails.

¶ 17 Appellant's remaining argument with respect to his first issue, and the arguments presented by his second and third issues contend essentially that the trial court erred when it failed to grant Appellant's motion for judgment of non-suit or enter judgment *non obstante verdicto* (n.o.v.) on Appellant's behalf. We will address these issues jointly.

¶ 18 Our standard of review for appeals from the denial of a motion for compulsory non-suit is as follows:

A motion for compulsory non-suit allows a defendant to test the sufficiency of a [plaintiff's] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all rea-

---

10. We have reorganized Appellant's issues.

11. The Private Detective Act of 1953, 22 P.S. § 11–49, regulates security guard companies

as well as private detective agencies. *See* 22 P.S. § 12(a)(11).

sonable inferences arising from the evidence. When so viewed, a nonsuit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

A compulsory non-suit is proper only where the facts and circumstances compel· the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

*Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649, 653 (1996) (citations omitted).

 ¶ 19 Our standard of review for the denial of a motion for judgment n.o.v. is as follows:

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that[,] even with all factual inferences decided adverse to

the movant[,] the law nonetheless requires a verdict in his favor[. W]hereas with the second[,] the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *See Goldberg v. Isdaner,* 780 A.2d 654, 659–60 (Pa.Super.2001).

¶ 20 Appellant argues first that the trial court should have entered judgment in its favor because Appellee could not establish that Appellant's alleged violation of the fingerprinting and criminal record check provisions of the Private Detective Act constituted negligence *per se.*

 ¶ 21 Generally, to prevail in a negligence case, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. *See Burman v. Golay & Co., Inc.,* 420 Pa.Super. 209, 616 A.2d 657 (1992). As stated above, Appellee contended at trial that Appellant was negligent *per se* because Appellant violated the provisions of the Private Detective Act regarding the hiring of non-licensed employees. *See* 22 P.S. § 23.

 ¶ 22 The concept of "negligence *per se*" establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. *See J.E.J. v. Tri-County Big Brothers/Big Sisters,* 692 A.2d 582, 585 (Pa.Super.1997). However, a plaintiff, having proven negligence *per se* cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered. *See id.,* 692 A.2d at 585.

¶ 23 We have defined "negligence *per se*" in the following fashion:

["Negligence *per se*" is] conduct, whether of action or omission, which *may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances.* Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se.* However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

In order to prove a claim based on negligence *per se,* the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Wagner v. Anzon, Inc.,* 453 Pa.Super. 619, 684 A.2d 570, 574 (1996) (citations and quotations omitted) (emphasis added).

¶ 24 Section 23, 22 P.S., states, in pertinent part, the following:

(b) No person shall hereafter be employed by any holder of a license certificate until he shall have executed and furnished to such license certificate holder a verified statement to be known as "employe[e]'s statement," setting forth:

(1) His full name, age and residence address;

(2) The country of which he is a citizen;

(3) The business or occupation engaged in for the three years immediately preceding the date of the filing of the statement, setting forth the place or places where such business or occupation was engaged in, and the name or names of employers, if any;

(4) That he has not been convicted of a felony, or of any offense involving moral turpitude, or of any of the misdemeanors or offenses described in subsection (a) of this section; [12]

(5) That he holds current and valid certification under the act of October 10, 1974 (P.L. 705, No. 235), known as the "Lethal Weapons Training Act," if, as an incidence to employment, he will carry a lethal weapon.

(6) Such further information as the court of common pleas may by rule require to show the good character, competency and integrity of the person executing the statement.

(c) The license holder shall act with due diligence in taking the necessary steps to ensure the veracity of the em-

12. The disqualifying crimes set forth in subsection (a) are as follows: (1) illegally using, carrying or possessing a pistol or other dangerous weapon; (2) making or possessing burglar's instruments; (3) buying or receiving stolen property; (4) unlawful entry of a building; (5) aiding escape from prison (6) unlawfully possessing or distributing habit forming narcotic drugs; (7) picking pockets or attempting to do so; (8) soliciting any person to commit sodomy or other lewdness; (9) any person whose private detective or investigator's license was revoked or application for such license was denied by the court of common pleas or by the authorities of any other state or territory because of conviction of any of the crimes or offenses specified in this section; (10) recklessly endangering another person; (11) terroristic threats; or (12) committing simple assault. 22 P.S. § 23(a).

ploye[e]'s statement, and immediately upon the verification of an employe[e]'s statement, the holder of a license certificate by whom such person has been or is to be employed shall cause two sets of fingerprints of the two hands of such person to be recorded in such manner as the court of common pleas may by rule prescribe. The holder of a license certificate shall immediately stamp, in indelible ink, the employe[e]'s statement and each set of fingerprints with the name, year and license certificate determined by the number of such statements furnished to such holder and shall be in numerical sequence.

(d) The holder of a license certificate shall affix one set of such fingerprints to the employe[e]'s statement, in such manner that the prints can be examined without disclosing the contents of the employe[e]'s statement, and shall retain such statement and prints so long as he shall be licensed under this act.

\* \* \*

(f) Within five days after the filing of such fingerprints, the court of quarter sessions shall cause such fingerprints to be compared with fingerprints of criminals now or hereafter filed in the records of the Pennsylvania State Police, and if the court finds any record affecting such prints, it shall immediately notify the holder of such license certificate and shall also refer the matter to the district attorney of the county. The quarter sessions court may also, from time to time, cause such fingerprints to be checked against the fingerprints of criminals now or hereafter filed in the records of the Pennsylvania State Police or of other official fingerprint files within or without this Commonwealth, and if the court finds that such person has been convicted of a felony or any other offense specified in subsection (a) of this section, he shall immediately notify the

holder of such license certificate and shall also refer the matter to the district attorney. The quarter sessions court shall at all times be given access to and may from time to time examine the fingerprints retained by the holder of a license certificate as provided in subsection (d) of this section.

¶ 25 It is unnecessary for us to consider whether Section 23, 22 P.S., creates a private cause of action for purposes of applying the negligence *per se* doctrine, because Appellant conceded that it violated the fingerprinting requirements of Section 23, and we conclude that, in any event, Appellant's failure to abide by the provisions of Section 23, 22 P.S., was not the proximate cause of Appellee's injuries. It is well settled that a tortfeasor, in this case Appellant, may be relieved of his responsibility for his negligent conduct from an intervening act of a third party, if that intervening act constitutes a "superseding cause." *Frey v. Smith*, 454 Pa.Super. 242, 685 A.2d 169, 173 (1996). A "superseding cause" is an act of a third person or other force which, by its intervention, prevents the negligent party from being liable for harm to another caused by his or her antecedent negligent conduct. *See Krasevic v. Goodwill Industries, Inc.*, 764 A.2d 561, 569 (Pa.Super.2000) (citations omitted). In *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977), our Supreme Court held that the act of a third person in committing an intentional tort or crime is a superseding cause. *Jeffries*, at 597, 379 A.2d at 115.

¶ 26 Appellant conceded that it hired Reed without previously conducting an employment history check, criminal record check, and fingerprint check. As the record indicates, Ms. Tarr sent the local and state criminal background checks to be completed two weeks after Reed had been

hired. Both criminal background checks indicated that Reed had not been convicted of a crime. *See* Deposition of Jacquelyn Tarr, 9/7/2000, at 44. Appellee concedes that if fingerprinting had been conducted in accordance with the Private Detective Act, the results of the fingerprinting would not have yielded a different conclusion with respect to Reed's criminal background. Thus, Reed's impending criminal act against Appellee would not have been foreseeable by Appellant despite its failure to abide by the mandates of the Private Detective Act, because Reed had not committed criminal acts in the past and there would have been no indication to Appellant or anyone else that he would have committed criminal acts in the future.

¶ 27 It is true that an actor may still be liable for his negligence despite the superseding criminal acts of another if, at the time of his negligent conduct, he realized or should have realized the likelihood that such a situation might be created and that a third person might avail himself of the opportunity to commit such a tort or crime. *Jeffries*, at 597, 379 A.2d at 115. Nevertheless, Appellant's compliance with the criminal background check requirements of the Private Detective Act indicated that Reed did not have a criminal record, and, thus, it would have been impossible for Appellant to realize that its negligent conduct would present Reed an opportunity to commit the crime of armed bank robbery. Indeed, the wrongful actions of a third party are not deemed to be foreseeable by a negligent actor merely because he or she could have speculated that they might conceivably occur. *See Mathis v. United Engineers &*

*Constructors, Inc.*, 381 Pa.Super. 466, 554 A.2d 96, 100 (1989).

¶ 28 Although Monique Wynn testified at trial that she observed Reed abuse alcohol and smoke marijuana while on duty for Appellant at Parkview Manor Apartments, this evidence, if known by Appellant's agents, would have demonstrated to Appellant that Reed was a poor employee but would not have demonstrated Reed's capacity to commit a crime of violence.[13] Moreover, observation of Reed's behavior by Appellant's other employees did not evince that Reed had a propensity to plan or commit violent crimes. Thus, any belief by Appellant's agents that Reed could have committed criminal activity would have been purely speculative. *See Mathis*, 554 A.2d at 100. Therefore, even after viewing the record in a light most favorable to Appellee, we conclude that Appellant's failure to conform to the fingerprinting provisions of the Private Detective Act was not the proximate cause of Appellee's injuries. Therefore, we are constrained to conclude that the trial court erred by failing to enter non-suit or judgment on Appellant's behalf. Accordingly, we are bound to reverse the judgment of the trial court and remand with the instruction that the trial court enter judgment on Appellant's behalf.

¶ 29 Next, we consider whether the trial court erred in allowing the jury to consider a cause of action in negligence, based upon the alleged negligent hiring, supervision and retention of Reed. At the outset, Appellee contends, and Appellant concedes, that Appellee did not specifically plead a cause of action regarding negligent hiring, supervision and retention based on the

13. Wynn also testified that, prior to the robbery, she observed Appellant and his two accomplices engaged in what she described as a "secretive" conversation, and she stated they appeared to be planning something. Wynn was unaware of the substance of this conversation, and, therefore, if the conversation was reported to Appellant's agents, it would have presented no indication that Reed was plotting an armed bank robbery.

Restatement (Second) of Torts § 317 (negligent hiring, supervision and retention) or upon Pennsylvania common law principles with respect to negligent hiring, supervision and retention. In reality, both Appellee's contention and Appellant's concession are only partially correct. Appellee's amended complaint sets forth a series of allegations which, taken together would establish a cause of action for both negligent hiring and negligence *per se* as a result of Appellant's alleged failure to adhere to the Private Detective Act. *See* Appellee's amended complaint, at 2–3. Nevertheless, Appellee's opening statement, suggested points for charge and the conversations held in chambers regarding the suggested points for charge indicate that Appellee abandoned her theory of negligent hiring pursuant to Pennsylvania common law or Section 317 of the Restatement (Second) of Torts and proceeded solely on the negligence *per se* theory. *See* N.T. trial volume I, 4/30–5/2/2001, at 32–57; *see also id.*, volume IV, 5/8–9/2001, at 127–36; *see also* Appellee's suggested points for charge, at 2–3. Accordingly, it is unnecessary to address Appellant's argument pertaining to negligent hiring and supervision as defined by the Restatement (Second) of Torts and Pennsylvania common law because this theory of liability was not presented to the jury.[14]

¶ 30 As we have found that the judgment in favor of Appellee must be reversed, we need not address Appellant's remaining issues. Accordingly, we reverse the judgment of the trial court and remand with the instruction that it enter judgment in Appellant's favor.

¶ 31 Judgment reversed. Case remanded with instructions. Panel jurisdiction relinquished.

---

14. The record indicates that the trial court supplied the jury with a definition of the general legal principle of negligence. This instruction was not sufficient for the jury to render a finding with respect to liability for negligent hiring and supervision under the Restatement (Second) of Torts or Pennsylvania common law. It is implicit from the trial court's instruction to the jury regarding the general principle of negligence that it wished to define a legal term of art, *i.e.* "negligence," to the jury so that the jury could better understand the related theory of negligence *per se*.