**William TUCKER and Helen Tucker,
H/W, Appellants,**

**v.**

**COMMUNITY MEDICAL CENTER
and Saadeddine Hijazi, M.D.,
Appellees.**

Superior Court of Pennsylvania.

Argued June 11, 2003.
Filed Sept. 19, 2003.

Jeffrey Kornblau, Jenkintown, for appellants.

Richard T. Curley, Allentown, for Hijazi, appellee.

Joseph T. Healey, Scranton, for Community Medical Center, appellee.

Before: MUSMANNO, BOWES and POPOVICH, JJ.

POPOVICH, J.

¶ 1 William Tucker (Husband) and Helen Tucker (Wife) appeal the judgment entered on July 26, 2002, in favor of Community Medical Center (CMC) and Saadeddine Hijazi, M.D. (Hijazi). Upon review, we affirm.

¶ 2 The relevant facts are set forth fully in the trial court's Memorandum of July 25, 2002:

On November 1, 1995, [Husband] was admitted to [CMC] to undergo an exploratory laparotomy by [Hijazi] due to [Husband's] persistent lower abdominal pain. Once [Husband] had been anesthetized, the CMC scrub nurse, Erica Schuback, provided a # 16 French Foley catheter to the circulating nurse, Dorothy Gaughn, so that [Husband] could be catheterized for the surgery. Nurse Gaughn applied 10 cc's of lubricant to the flexible latex catheter and proceeded to insert it through the urethral opening (meatus) and into the urethra. When the catheter was almost halfway inserted, Nurse Gaughn felt some resistance and slightly withdrew the catheter as she simultaneously rotated it in an effort to determine whether the pliable catheter had "kinked" during insertion. As she performed this adjustment maneuver, Nurse Gaughn noted the presence of red-tinged fluid in the catheter tubing and, therefore, immediately withdrew the catheter from [Husband's] urethra and notified [Hijazi] who was scrubbing for the surgery in an adjacent room.

In an effort to investigate the etiology of the resistance, [Hijazi] used a smaller catheter as a "dipstick" by inserting in approximately 1″ to 1½″ into the tip of [Husband's urethra] to ascertain whether the dark fluid was blood or urine. Upon withdrawing the smaller catheter, [Hijazi] likewise observed a [red-tinged] fluid and promptly contacted [an] urologist. The consulting urologist, Milan Smolko, M.D., performed a cytoscopy and visualized a urethral "stricture" which he proceeded to dilate with surgical instruments so that a larger # 18 French Foley catheter could be inserted into the bladder to catheterize [Husband]. Dr. Smolko diagnosed [Husband's] condition at that time as "severe urethral stricture disease." Once [Husband] had been catheterized by Dr.

Smolko, [Hijazi] performed his diagnostic laparoscopy, lysed the symptomatic adhesions which were present on the bowel wall and the lateral wall of the pelvic cavity, and removed the appendix.

[Husband and Wife] later commenced this malpractice action [and derivative loss of consortium action. Husband and Wife alleged] that Nurse Gaughn and [Hijazi] used excessive force in attempting to insert the catheter and perforated the lining of [Husband's] urethra, thereby causing him to develop "strictures" and "false passages" that have resulted in urologic complications and sexual dysfunction. During the trial [Husband] offered the testimony of [an] urologist, Michael Goodman, M.D., in support of his allegations. [Hijazi] and CMC maintained that[,] unbeknownst to any of the health care providers prior to the laparoscopic procedure, [Husband] had a pre-existing, asymptomatic stricture that constricted his urethral channel and compromised their ability to catheterize him. [Hijazi and CMC's] contention that [Husband] had a pre-existing structure was corroborated by the fact that Dr. Smolko and [Hijazi] [saw] a stricture through the cytoscope on November 1, 1995, which urethral stricture could not have developed during the brief interval between the attempted catheterization by Nurse Gaughn and [Hijazi], and the cytoscopic visualization of the stricture by Dr. Smolko and [Hijazi].

[Hijazi and CMC] asserted that since the mucosa of a stricture is so friable, linear "tears" or "abrasions" to that mucosa will occur and result in bleeding even if the catheter is inserted with the utmost care and caution. Hence, [Hijazi] and CMC acknowledged that the attempted catheterization caused unavoidable tears or abrasions of the fragile mucosa of [Husband's] pre-existing

stricture, but [Hijazi and CMC] steadfastly denied that they used excessive force and "perforated" the lining of the urethra with the catheter. Nurse Gaughn, Nurse Schuback and [Hijazi] testified that excessive force was not used in the original attempt to insert the catheter and that no force whatsoever was employed once resistance was detected.

CMC and [Hijazi] presented the expert testimony of [an] urologist, Terrence Malloy, M.D., and [a] general surgeon, Victor J. Celani, M.D., who both testified that Nurse Gaughn and [Hijazi] acted within the standard of care during the attempted catheterization, including Nurse Gaughn's decision to simultaneously withdraw and rotate the catheter[,] and [Hijazi's] judgment to use a smaller catheter as a diagnostic "dipstick." The defense also relied upon the standard of care articulated in the treatise *Campbell's Urology* which states that "[i]f resistance is met, pressure and ascertain at what level the potential obstruction exists." [Hijazi] and CMC argued that the controlling standard of care was observed during [Husband's] attempted catheterization and that the tears or abrasion of the friable mucosa of his pre-existing stricture were inevitable despite their exercise of due care.

A trial was conducted from November 26, 2001, to December 3, 2001, and in response to special interrogatories, the jury found that [Hijazi] and CMC were not negligent. [Husband and Wife] filed a motion for post-trial relief on December 10, 2001, and by order dated December 11, 2001, [Husband and Wife were] directed to [. . .] [request] transcription of the relevant trial record and [submit] a supporting brief within thirty days of the filing of the trial transcript. [Thereafter, on December 12, 2001, Husband and Wife filed an Amended Motion for Post–Trial Relief.] After the transcript was filed on February 4, 2002, and the parties had submitted their [briefs], oral argument was [scheduled] for April 16, 2002, but was postponed until May 16, 2002, at the request of [Husband and Wife]. Following oral argument, [the trial court denied Husband and Wife's post-trial motions on July 25, 2002].

Trial Court Memorandum, 7/25/2002, at 2–6 (citations and footnotes omitted).

¶ 3 Following denial of Husband and Wife's Post–Trial Motions, the trial court entered judgment in favor of Hijazi and CMC on July 26, 2002. Thereafter, on August 20, 2002, Husband and Wife filed a timely Notice of Appeal to this Court. Husband and Wife filed an ordered Pa. R.A.P.1925(b) Concise Statement of Matters Complained of on Appeal. The trial court authored a Pa.R.A.P 1925(a) Opinion that addressed Husband and Wife's matters.

¶ 4 Husband and Wife raise the following questions for our review:

1. Whether the trial court abused its discretion in failing to conduct [a] *Frye* inquiry upon [the] medically unreliable [expert opinion presented by Hijazi and CMC] that a Foley catheter does not cause perforation and creation of [a] false passage out of the urethra where the issue was properly preserved for determination and review upon pretrial Motion *In Limine,* was orally renewed at trial and [Husband and Wife] moved to strike defense expert testimony in that regard?

2. Whether the trial court abused its discretion in failing to conduct *Frye* inquiry upon [the] medically unreliable defense expert opinion [presented by Hijazi and CMC] that [Husband] suffered with pre-existing

false passage where the issue was preserved for determination and review upon pretrial Motion *In Limine,* was orally renewed at trial and [Husband and Wife] moved to strike defense expert testimony in that regard?

3. Whether the [trial court] erred in dismissing Court IV of [Husband and Wife's] Amended Civil Action Complaint, stating a claim against [CMC], for lack of informed consent to the catheterization procedure performed by [CMC's nurse]?

4. Whether the trial court palpably abused its discretion in refusing to strike for cause a member of the jury panel who was a nurse employee of [CMC] who performed catheterizations on behalf of CMC and who was properly stricken as presumptively biased where [Husband and Wife] timely moved to strike the prospective juror for cause, submitted an Affidavit verifying the proceedings in accordance with local rule of court and raised the issue in Brief in Support of Motion for Post-Trial Relief?

5. Whether the trial court abused its discretion in allowing misleading cross-examination of [Husband] upon a [triple-level] hearsay statement made at an unidentified time by an unidentified person who was not available for [cross-examination]?

Husband and Wife's Brief, at 3.[1]

¶ 5 Husband and Wife's first and second claims allege that the trial court erred when, over their repeated objections, it admitted the expert testimony of Terrence Malloy, M.D., without first conducting a hearing pursuant to *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), and its Pennsylvania equivalent, *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977).

¶ 6 Before we reach the merits of Husband and Wife's contention, we address Hijazi and CMC's argument that, despite the fact that a Motion *In Limine* was filed to prevent Dr. Malloy's testimony, Husband and Wife's claims are waived for failure to lodge a timely objection at trial. Husband and Wife contend that the Motions *In Limine* preserved their *Frye* claims for review.

¶ 7 The record indicates that on November 21, 2001, Husband and Wife filed four Motions *In Limine,* two of which sought to limit Dr. Malloy's testimony. Pursuant to *Frye,* the Motions sought to prevent Dr. Malloy from testifying that Husband suffered from a previous "false passage," and from testifying that a "false passage" could not be caused by a Foley catheter. *See* Motions *In Limine,* 11/21/2001. The trial court deferred adjudication on the motions until Dr. Malloy arrived in Lackawanna County for trial. N.T. Trial, 11/26/2001, at 3–12; 11/29/2001, at 8–9. In the interim, the parties agreed that no defense expert witness would opine that Husband had a pre-existing "false passage" and that Dr. Malloy would not be asked on direct examination whether a Foley catheter can cause a "false passage." As a result of this stipulation, a hearing was unnecessary for Husband and Wife's Motions *In Limine* because the stipulation effectively withdrew the Motions.

¶ 8 On direct examination, Dr. Malloy was asked if there was any evidence that Nurse Gaughn used excessive force in inserting the catheter. N.T. Trial, 11/28/2001, at 169. Dr. Malloy responded that there was no evidence of excessive force on Nurse Gaughn's part when she

---

1. We have renumbered Husband and Wife's issues for purposes of organization.

inserted the catheter, and that the catheter used could not cause a "perforation." Husband and Wife did not object to this statement. Thereafter, Husband and Wife cross-examined Dr. Malloy vigorously regarding his assertion. At the commencement of trial the following day, Husband and Wife argued that Dr. Malloy's opinion testimony should have been stricken because it was not supported by several urological treatises. N.T. Trial 11/29/2001, at 2–4. The trial court denied Husband and Wife's Motion, finding that the stipulation prevented examination of Dr. Malloy only in regards to testimony about Husband having a prior existing "false passage." Further, the trial court found that Husband and Wife failed to object to Dr. Malloy's testimony, and, accordingly, it would not grant relief based on their failure to object. *Id.*, at 6–7, 11.

¶ 9 We are satisfied that the trial court did not err. As demonstrated by Dr. Malloy's testimony, the terms "false passage" and "perforation" are distinct terms-of-art in urological medicine. A "false passage" connotes a narrowing of the mucosal lining of the urethra which results in abrasions of the urethra but not an actual perforation of the urethra. N.T. Trial, 11/28/2001, at 160–161. A "perforation" of the urethra is a hole leading to the *corpus cavernosum urethra* that surrounds the urethral tube. *Id.*, at 161. Thus, Dr. Malloy's opinion testimony regarding a "perforation" of the urethra was not barred by the stipulation between the parties. Therefore, to preserve this issue for review, Husband and

Wife were obligated to object at trial to Dr. Malloy's testimony as their previous Motions *In Limine* were effectively withdrawn as a result of their stipulation. However, they did not object, and, therefore, the issue is waived for purposes of review.[2] *See Fleck v. Durawood*, 365 Pa.Super. 123, 529 A.2d 3, 6 (1987); *see also* Pa.R.Civ.P. 227.1(b)(1).

¶ 10 Husband and Wife's second argument with respect to *Frye* is likewise waived for purposes of review because Dr. Malloy's testimony with respect to Husband's pre-existing condition referred to him having only a pre-existing "stricture," not a pre-existing "false passage." As Dr. Malloy testified, a "stricture" is a diminishment in the normal diameter of the urethra. N.T. Trial, 11/28/2001, at 158. Husband and Wife's stipulation prevented testimony regarding Husband's possible pre-existing "false passages." Thus, Appellant's second argument is waived because it was not preserved at trial by objection or by motion. *Fleck*, 529 A.2d at 6.

¶ 11 Even if Husband and Wife's first claim was not waived, it would be without merit. As we held recently in *Trach v. Fellin*, 817 A.2d 1102 (Pa.Super.2003), the *Frye* test sets forth an exclusionary rule of evidence that applies only when a party wishes to introduce *novel scientific evidence obtained from the conclusions of an expert scientific witness.* *Trach*, 817 A.2d at 1108–1109

---

2. Husband and Wife equate the terms "false passage" and "perforation" with each other based on the following statement from an article presented during post-trial motions:
   ["False passage"] refers to a perforation of the urethra, which may occur with any instrument.
   *Case Studies in Urology for the House Officer* 225 (Peter T. Nieh, M.D., and Martin I. Resnick, M.D., editors, 1990).

Even if we assume, *arguendo*, that the article is correct, Husband and Wife failed to object to a violation of the parties' stipulation when Dr. Malloy referenced "perforation" in his testimony, and Husband and Wife did not use the above article to attempt to impeach Dr. Malloy on cross-examination.

(emphasis added). Under *Frye*, a party wishing to introduce such evidence must demonstrate to the trial court that the relevant scientific community has reached **general acceptance** of the principles and methodology employed by the expert witness before the trial court will allow the expert witness to testify regarding his conclusions. *Id.*, 817 A.2d at 1108–1109, 1112 (emphasis added). However, the **conclusions** reached by the expert witness from generally accepted principles and methodologies need not also be generally accepted. *Id.*, 817 A.2d at 1112. Thus, a court's inquiry into whether a particular scientific process is "generally accepted" is an effort to ensure that the **result** of the scientific process, *i.e.*, the proffered evidence, stems from "scientific research which has been conducted in a fashion that is generally recognized as being sound, and is not the fanciful creations [sic] of a renegade researcher." *See Id.*, 817 A.2d at 1111 (*quoting Blum v. Merrell Dow Pharms., Inc.*, 564 Pa. 3, 9–10, 764 A.2d 1, 5 (2000) (Cappy, C.J., dissenting)).

■ ¶ 12 In the present case, *Frye* is inapplicable because Dr. Malloy's opinion testimony regarding whether a Foley catheter causes a "false passage" and whether Husband suffered from a pre-existing medical condition that rendered him susceptible to this type of injury was not, nor could it be considered, **novel scientific evidence**. *Trach*, 817 A.2d at 1108–1109 (emphasis added). Diagnosis and evaluation in a medical context are, in a sense, scientific, yet the methodologies used by Doctor Malloy to diagnose and evaluate Husband in this case (reliance on scholarly journals, review of medical records and examination of the patient) were not novel, and Husband and Wife failed to produce evidence that they were novel.

■ ¶ 13 This case is analogous to our holding in *Commonwealth v. Passarelli*, 789 A.2d 708, 716 (Pa.Super.2001), where we held that expert opinion testimony with respect to "shaken baby syndrome," offered to prove intentional misconduct on the part of the defendant, was not "scientific evidence" within the meaning of *Frye*. In the present case, Dr. Malloy's testimony was offered as a means to explain that Husband would have been injured even if Hijazi and CMC would have followed the accepted standard of care, and, therefore, it is not "scientific evidence" within the meaning of *Frye*. *Passarelli*, 789 A.2d at 716. Accordingly, Husband and Wife's reliance on *Frye* and its progeny is erroneous. Therefore, even if the claim was not waived, we would nevertheless find that it would fail.

¶ 14 We turn to Husband and Wife's third claim: Whether the trial court erred in dismissing Court IV of the Amended Complaint, which alleged a claim against CMC for lack of informed consent to the catheterization procedure performed by CMC's nurse. The record indicates that Count IV of Husband and Wife's Amended Complaint alleged a claim of negligence arising from lack of informed consent against CMC because, as Husband and Wife alleged, CMC "had a duty to and/or assumed the duty to inform [Husband] of the fact that catheterization was to be performed on him [. . .]." *See* Husband and Wife's Amended Complaint, 3/21/1997, at 9. Following CMC's preliminary objection, the trial court dismissed the claim on December 26, 1997.

■ ¶ 15 In considering preliminary objections in the nature of a demurrer, we must examine the complaint to determine whether it sets forth a cause of action which, if proved, would entitle a party to the relief sought; if such is the case, the demurrer may not be sustained but if the complaint fails to set forth a cause of action, preliminary objections in the nature

of a demurrer are properly sustained. *See Doe v. Dyer–Goode*, 389 Pa.Super. 151, 566 A.2d 889 (1989).

■■■ ¶ 16 Upon review, we are satisfied that the trial court acted properly when it dismissed Count IV of Husband and Wife's Amended Complaint. It is clear that Count IV of the Amended Complaint sets forth a claim of corporate negligence because it alleges that CMC "had a duty to and/or assumed the duty to inform [Husband] of the fact that catheterization was to be performed on him [. . .]." *See* Husband and Wife's Amended Complaint, 3/21/1997, at 9. Pennsylvania law forbids a claim of corporate negligence against a hospital to be founded upon a theory that the hospital failed to ensure the patient's informed consent. *See Kelly v. Methodist Hosp.*, 444 Pa.Super. 427, 664 A.2d 148 (1995).[3] Accordingly, Count IV of Husband and Wife's Amended Complaint failed to state a cause of action, and the trial court acted properly when it dismissed the claim. Therefore, Husband and Wife's argument fails.

■■■ ¶ 17 Next, we consider whether the trial court abused its discretion in refusing to strike for cause Pamela Ruth Bartos, a nurse employee of CMC, from the jury panel. The decision to grant or deny a challenge for cause for a juror in a close relationship with either of the parties in a case is a question of law and is subject to ordinary review. *See McHugh v. Proctor & Gamble Paper Products Co.*, 776 A.2d 266, 270 (Pa.Super.2001). However, before we address the merits of this contention, we note that the trial court found this issue waived as a result of Husband and Wife's failure to include a transcription of the *voir dire* proceedings with their post-trial motion. *See* Trial Court Memorandum, 7/25/2002, at 9. We disagree with the trial court's conclusion.

¶ 18 Lackawanna County Local Rule 227.1(g) (relating to post-trial motion procedure) states:

> (g) Where it is determined that a transcript or a portion thereof is necessary, counsel shall have as a matter of right ten additional days to submit additional allegations of error following receipt of the transcript.

¶ 19 The record reflects that Husband and Wife filed their Motion for Post–Trial Relief on December 10, 2001, and an Amended Post–Trial Motion on December 12th. In the Amended Post–Trial Motion, Husband and Wife requested the transcript of the jury selection proceedings, if the jury selection proceedings were recorded. *See* Request for Transcript, 12/12/2001, at 2. The transcription was never presented to Husband and Wife, and it is unclear from the record whether the jury selection proceedings were recorded by a stenographer. Accordingly, we are constrained to find that the trial court erred when it found this issue waived.

■■■ ¶ 20 Although we have determined that the trial court erred when it found this claim waived, it is unnecessary to remand the case. After finding the issue waived in its Memorandum, the trial court went on to conclude that, even if the issue

---

**3.** This Court has recognized one limited exception to this rule in *Friter v. Iolab Corp.*, 414 Pa.Super. 622, 607 A.2d 1111 (1992), in which a hospital was held liable for the lack of informed consent because the hospital was involved in a clinical investigation for the Food and Drug Administration. Federal regulations required the hospital to obtain the informed consent of any patient participating in the study. Thus, the hospital assumed an independent duty to obtain the patient's informed consent. *Friter*, 607 A.2d at 1114. This exception does not apply in this case as the underlying claim is garden-variety type of negligence, *i.e.*, medical malpractice.

was not waived, no prejudice could accrue to Husband and Wife by the trial court's failure to strike. We agree. Although it is clear that the employees of a defendant are incompetent to serve as jurors, *McHugh*, 776 A.2d at 270, no prejudice accrues to the party seeking exclusion where the incompetent juror is excluded by a peremptory challenge, and the party seeking exclusion does not exhaust all of its peremptory challenges. *See Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 107 (1996).

¶ 21 In the present case, Ms. Bartos was listed as an alternate juror, and Husband and Wife had two peremptory strikes for alternate jurors. Husband and Wife struck Ms. Bartos, and with their final peremptory challenge, struck Jean Marie Torrisi. At the end of the process, Deborah Ann Waznak remained as the sole alternate juror. Accordingly, as Husband and Wife's peremptory challenges were not exhausted after utilizing one peremptory challenge to strike Ms. Bartos, no prejudice accrued to them. *See Chambers*, 685 A.2d at 107. Therefore, Husband and Wife's claim fails.

■ ¶ 22 Husband and Wife's final claim is that the trial court abused its discretion in allowing misleading cross-examination of Husband upon a "triple-level hearsay" statement. As we have held consistently, the admission of testimony is a matter left to the discretion of the trial court, and we, as an appellate court, will not overturn a trial court's rulings with regards to the admission of testimony without an abuse of that discretion. *See Gatto v. Kisloff*, 437 Pa.Super. 328, 649 A.2d 996, 997 (1994).

■ ¶ 23 Before we reach an analysis of the merits of this claim, we note that the trial court has also found this claim waived. We agree with the trial court's conclusion. The record indicates that

Husband and Wife did not raise this claim in either their original Motion for Post–Trial Relief or in their Amended Motion for Post–Trial Relief. Rather, the issue was first raised in their Brief in support of their Amended Post–Trial Motion. It is clear that issues not preserved in a post-trial motion are waived. *See Fleck*, 529 A.2d at 6; *see also* Pa.R.Civ.P. 227.1(b)(1). However, as indicated above, Lackawanna County Local Rule 227.1(g) allows ten additional days to submit allegations of error following receipt of a requested transcript. In the present case, Husband and Wife requested a transcript of Husband's cross-examination on December 12th with their other transcript requests. The transcripts were filed on February 4, 2002. However, this claim was not raised until March 6, 2002, the day that Husband and Wife filed their Brief in support of their Amended Post–Trial Motion. Accordingly, Husband and Wife did not raise their new claim in an amended post-trial motion within ten days following the receipt of the transcripts, and, therefore, it is waived. *See* Lackawanna County Local Rule 227.1(g); *see also* Pa.R.Civ.P. 227.1(b)(1).

¶ 24 As each of Husband and Wife's claims on appeal fail or have been waived, we affirm the judgment of the trial court.

¶ 25 Judgment affirmed.

¶ 26 MUSMANNO, J. **Concurs in the Result.**