Martha CUMMINS and Harry
H. Cummins, Jr., H/W,
Appellants,

v.

Deborah M. ROSA, M.D., and Wasfy F.
Fahmy, M.D., and Phoenixville Hospi-
tal of the University of Pennsylvania
Health Systems, Appellees.

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.
Filed March 22, 2004.

Thomas R. Hurd, Philadelphia, for appellants.

Jeffrey C. McElroy, Philadelphia, for appellees.

BEFORE: JOHNSON, LALLY-GREEN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Martha Cummins (Wife) and Harry H. Cummins, Jr. (Husband) (collectively Appellants) appeal the judgment entered in favor of Appellees Deborah M. Rosa, M.D., and Wasfy F. Fahmy, M.D., on April 15, 2003, in the Court of Common Pleas of Philadelphia County. On appeal, Appellants contend that the trial court committed reversible error when it failed to rule inadmissible certain expert testimony presented by Appellees pursuant to *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and its Pennsylvania equivalent, *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977). Upon review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: Appel-lants commenced the present medical malpractice action against Appellees and the Phoenixville Hospital of the University of Pennsylvania Health System[1] *via* complaint filed May 24, 1999. Appellants' complaint alleged that Appellees cut, burned, or crushed Wife's right ureter[2] negligently during a 1997 aortobifemoral bypass procedure. As a result of the Wife's injury, urine leaked into her abdomen causing the loss of her right kidney and nerve damage in her left leg. In response, Appellees contended that Wife's injury was the result of a non-negligent complication of surgery, *i.e.*, that the injury was the result of a loss of blood supply to the ureter that occurred when the ureter was mobilized during her surgery.

¶ 3 The case proceeded through pre-trial pleadings and discovery, and, on May 7, 2003, a three-day jury trial commenced. As part of their case-in-chief, Appellees wished to present at trial the testimony of two medical experts, Neal B. Phillips, M.D., a urologist,[3] and Michael S. Weingarten, M.D., a vascular surgeon. However, after the close of Appellants' case-in-chief, Appellants filed on May 10, 2002, a motion that requested the trial court to exclude the testimony of Dr. Phillips and Dr. Weingarten pursuant to *Frye*.[4] [5] On that same day, the trial court denied Appellants' *Frye* motion without a hearing.

1. The cause of action against Phoenixville Hospital was dismissed with prejudice by stipulation of the parties on May 7, 2003, and, accordingly, Phoenixville Hospital is not a party to the present appeal.

2. The ureter is a tube which carries urine from the kidneys to the bladder.

3. Dr. Phillips' testimony was presented *via* videotape at trial.

4. We note that Appellants' *Frye* motion did not request a *Frye* hearing to determine the admissibility of Dr. Phillips' and Dr. Weingarten's testimony, but, instead, the motion ar-gued that, "[t]he opinions of [Dr. Phillips and Dr. Weingarten] do not pass the *Frye* general acceptance test and must be precluded." *See* Appellants' motion to bar the expert testimony of defendants' experts, 5/10/2002, at 7.

5. We also note that Appellants' *Frye* motion does not appear in the certified record, and the motion was never docketed with the Prothonotary. Instead, Appellants presented their *Frye* motion to the trial court directly on May 10, 2002, and the trial court ruled on the motion on that same day. In their reproduced record, Appellants provided this Court with a copy of their *Frye* motion. It is Appel-

¶ 4 Trial concluded on May 13, 2002, and the jury rendered a verdict in favor of Appellees. Thereafter, on May 22, 2002, Appellants filed a post-trial motion that contended requested a new trial on the following bases: (1) the trial court committed reversible error when it denied Appellants' *Frye* motion; and (2) the verdict was against the weight of the evidence. The trial court denied Appellants' post-trial motions on February 28, 2003. Appellants filed a notice of appeal to this Court on March 13, 2003, and the trial court ordered Appellants to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).[6] Appellants complied with the trial court's order and filed the Pa.R.A.P. 1925(b) statement. Thereafter, on June 5, 2003, the trial court authored an opinion pursuant to Pa.R.A.P. 1925(a) that addressed Appellants' matters.

¶ 5 We turn to an analysis of Appellants' claim. Appellants argue that they were entitled to a new trial because the conclusions of Dr. Phillips and Dr. Weingarten with respect to the cause of Wife's injuries were not generally accepted by the medical community, and, therefore, were inadmissible pursuant to *Frye* and *Topa*. Our review is governed by the following standard:

> When presented with an appeal from the denial of a motion for a new trial, our standard of review is whether the trial court committed an error of law that controlled the outcome of the case or committed an abuse of discretion. An abuse of discretion is not merely an

error of judgment; it must be shown that the law was misapplied or overridden, or that the judgment exercised was manifestly unreasonable or the result of bias, ill will, prejudice, or partiality. Moreover, when a party requests a new trial based on the trial court's evidentiary rulings, such rulings must be shown to have been erroneous and harmful to the complaining party. If the evidentiary rulings in question did not affect the verdict, we will not disturb the jury's judgment.

*Cacurak v. St. Francis Med. Ctr.*, 823 A.2d 159, 164–65 (Pa.Super.2003) (citations omitted).

¶ 6 Recently, in *M.C.M. v. Milton S. Hershey Med. Ctr. of the PA State Univ.*, 834 A.2d 1155 (Pa.Super.2003), we presented the following summary of the law of this Commonwealth regarding the application of the exclusionary rule set forth in *Frye:*

> [T]he *Frye* test sets forth an exclusionary rule of evidence that applies only when a party wishes to introduce ***novel scientific evidence obtained from the conclusions of an expert scientific witness***. [*Trach v. Fellin* ], 817 A.2d [1102, 1108–09 (Pa.Super.2002) ] (emphasis added). Under *Frye*, a party wishing to introduce such evidence must demonstrate to the trial court that the relevant scientific community has reached ***general acceptance*** of the principles and methodology employed by the expert witness before the trial court will allow the expert witness to testify regarding his conclusions. [*Trach* ], 817 A.2d at

---

lants' responsibility to provide a complete certified record on appeal. *McNeal v. Eaton Corp.*, 806 A.2d 899, 904 n. 4 (Pa.Super.2002). Nevertheless, our review of this matter is not hampered because Appellants placed their *Frye* motion in its reproduced record, and Appellee has cited to the *Frye* motion within its brief. We find Appellee's reference to the *Frye* motion in its argument

to be a tacit agreement of its authenticity. Therefore, we will address the merits of Appellants' claim. *Id.*, 806 A.2d at 904 n. 4.

6. Judgment was not entered on the jury's verdict until April 15, 2003. Accordingly, we deem Appellants' premature March 13, 2003 notice of appeal timely filed on April 15th. *See* Pa.R.A.P. 905(a).

1108–09, 1112 (emphasis added). However, the *conclusions* reached by the expert witness from generally accepted principles and methodologies need not also be generally accepted. *Id.*, 817 A.2d at 1112. Thus, a court's inquiry into whether a particular scientific process is "generally accepted" is an effort to ensure that the *result* of the scientific process, *i.e.*, the proffered evidence, stems from "scientific research which has been conducted in a fashion that is generally recognized as being sound, and is not the fanciful creations [sic] of a renegade researcher." *See id.*, 817 A.2d at 1111 (quoting *Blum v. Merrell Dow Pharms., Inc.*, 564 Pa. 3, 9–10, 764 A.2d 1, 5 [2000] (Cappy, C.J., dissenting)). *M.C.M.*, 834 A.2d at 1158–59 (emphasis in original).

■■ ¶ 7 When we apply *M.C.M.* to the present case, we conclude that Appellants' claim is without merit. The record indicates that Appellants' *Frye* motion did not challenge the *methodology* used by Dr. Phillips and Dr. Weingarten to reach their conclusions regarding the cause of Wife's injury. Rather, the motion challenged the *conclusions* that Dr. Phillips and Dr. Weingarten reached regarding the cause of Wife's injury. *See* Appellants' motion to bar the expert testimony of defendants' experts, 5/10/2002, at 1, 5. As stated above, the *Frye* test does not require that the relevant scientific community generally accept the *conclusions* of an expert witness. *Id.*, 834 A.2d at 1158–59. Instead, the party seeking exclusion of the witness' testimony must demonstrate that the methodology used to reach the expert witness' conclusion was not generally accepted by the relevant scientific community. *Id.*, 834 A.2d at 1158–59. Thus, Appellants' challenge to the testimony of Dr. Phillips and Dr. Weingarten was an attack upon the weight of the testimony rather than a challenge to its scientific validity. *See, e.g., id.*, 834 A.2d at 1158–59.

¶ 8 Moreover, a review of the record indicates that the methodology employed by Dr. Phillips and Dr. Weingarten in reaching their conclusions consisted of analysis of Wife's medical records and reliance upon their respective personal expertise to reach a conclusion regarding the source of her injuries. Clearly, this type of methodology is accepted generally among the medical community for diagnosis and treatment. Accordingly, *Frye* was not applicable in this case. *See M.C.M.*, 834 A.2d at 1158–59; *see also Trach*, 817 A.2d at 1114 (properly qualified expert may rely on their expertise as part of their analysis of issue); *cf. Tucker v. Cmty. Med. Ctr.*, 833 A.2d 217, 224 (Pa.Super.2003) (review of medical records to reach conclusion regarding source of plaintiff's injuries not novel). Therefore, the trial court did not abuse its discretion when it denied Appellants' motion.

¶ 9 In the appeal before us, Appellants attempt to re-assert this argument and contend additionally that "[i]n cases that turn on scientific causation, the causal relation itself must be accepted as a general matter in the relevant scientific community before expert testimony of the existence of causality in the particular case may be properly admitted." Appellants' brief, at 16. As support for this argument, Appellants rely on a series of cases that this Court disapproved specifically in *Trach*. *See Trach*, 817 A.2d at 1112. Consequently, Appellants' argument is contrary to the case law of this Commonwealth with respect to *Frye* and, therefore, fails.

¶ 10 Inasmuch as Appellants' sole claim fails, we affirm the judgment of the trial court.

¶ 11 Judgment affirmed.