J-A34010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARILYN E. TAYLOR AND GREGORY L. TAYLOR, HUSBAND AND WIFE<br><br>Appellants<br><br>v.<br><br>JOANNA M. DELEO, D.O.<br><br>Appellee | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br>No. 721 MDA 2015 |

Appeal from the Judgment Entered April 6, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2009-CV-05258-MM

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 07, 2016**

Appellants, Marilyn E. Taylor and Gregory L. Taylor, Husband and Wife, appeal from the judgment entered after a second jury found against the Taylors in their medical malpractice claim against Appellee, JoAnna M. DeLeo, D.O. The Taylors challenge the trial court's denials of motions *in limine* that they had filed prior to the second trial. After careful review, we conclude that none of the Taylors' issues require the grant of a third trial, and therefore affirm.

We have previously summarized the factual background of this case as follows.

> The events that led to this medical malpractice suit unfolded over the course of many years and involved a series of laparoscopic procedures conducted on Mrs. Taylor that were intended to address chronic abdominal pain and severe acid

reflux. Laparoscopic surgery, unlike more traditional "open" surgery, relies on making small incisions in the abdomen, which allow the insertion of surgical tools and of a fiber optic camera by which the surgeon can see what she is doing. By not requiring large incisions, such surgery is less invasive and generally leads to faster recovery time. One known complication from a laparoscopic procedure is an abdominal adhesion, whereby scar tissue forms between internal organs and the wall of the abdominal cavity, which can cause pain and complications with digestion. Mrs. Taylor underwent three laparoscopic procedures in the early 1990s, before she was Dr. DeLeo's patient, which resulted in extensive adhesions.

Mrs. Taylor became Dr. Deleo's patient in 1996, when Dr. DeLeo performed the first of what would be many surgical procedures. Doctor DeLeo performed a laparoscopic lysis (or cutting) of adhesions, removing the adhesions caused by her previous procedures, in an attempt to relieve Mrs. Taylor's chronic pain. Between March 15, 1999 and May 22, 2008, Dr. DeLeo performed a total of thirteen laparoscopic surgeries, although Mrs. Taylor claims she only received short-term relief from each procedure. On several occasions, Dr. DeLeo had to convert the laparoscopic procedure into a more traditional "open" surgery, or abandon the procedure all together, due to complications. On three occasions, Dr. DeLeo caused small tears, or enterotomies, in Mrs. Taylor's bowels, which she then repaired.

Four days after Dr. DeLeo performed her final surgery on Mrs. Taylor, Mrs. Taylor was admitted to the emergency room. She was suffering from tears in her colon, which allowed the contents of her bowels to leak into her abdominal cavity. This had led to peritonitis and sepsis, potentially life-threatening conditions, that required multiple follow-up surgeries and, the Taylors claim, caused continuing debilitating effects.

*Taylor v. DeLeo*, No. 188 MDA 2012, at 1-3 (Pa. Super., filed 1/25/13) (unpublished memorandum).

The Taylors subsequently filed a complaint in medical malpractice against Dr. DeLeo, asserting that during a twelve year period, she had performed the surgeries negligently and in some cases, unnecessarily. The

case was tried before a jury in September 2011, resulting in a defense verdict. The Taylors appealed, arguing in relevant part that the trial court had erred in instructing the jury on the "two schools of thought" doctrine regarding the lysis of adhesions more than three times.

The "two schools of thought" doctrine in medical malpractice cases provides an absolute defense when the defendant chose among two commonly accepted treatment options. *See Jones v. Chidester*, 610 A.2d 964, 969 (Pa. 1992). After reviewing the record, this Court concluded that there was no evidence that lysing adhesions thirteen times, as Dr. DeLeo did in this matter, as opposed to up to three times, to relieve pain was commonly accepted in the medical community. Thus, this Court reversed the judgment and remanded for a new trial.

After remand, the Taylors filed a substantial number of motions *in limine*, including a motion seeking permission to present evidence of Dr. DeLeo's loss of operating privileges at several hospitals during the relevant time period, a motion seeking to preclude the testimony of Dr. DeLeo's expert, Mark Pello, M.D., F.A.C.S., and a motion to permit cross-examination of Dr. DeLeo with treatises that Dr. Pello, but not Dr. DeLeo, conceded were authoritative. The trial court denied all of the Taylors' motions *in limine*, and granted Dr. DeLeo's motion to preclude cross-examination based upon the content of certain published articles. The case proceeded to a second jury trial.

The second jury also returned a defense verdict, and the Taylors filed post-trial motions. Those motions were heard by a three-judge panel of the trial court. After argument and briefs, the panel denied the Taylors' post-trial motions, and this timely appeal followed.

On appeal, the Taylors raise challenges to the trial court's pre-trial rulings on three issues. First, that the trial court precluded the Taylors from presenting evidence about Dr. DeLeo's loss of operating privileges at several hospitals during the relevant time period. Second, that Dr. Pello's testimony was admitted in violation of the **Frye** test.[1] Finally, that the Taylors were prohibited from questioning Dr. DeLeo about medical treatises that her own expert witness, Dr. Pello, conceded were authoritative. We will address these issues in sequence.

The Taylors first argue that the trial court erred in ruling that evidence of Dr. DeLeo's loss of operating privileges at several hospitals during the relevant time period was precluded pursuant to the Peer Review Protection Act ("PRPA"), 63 P.S. §§ 425.1 – 425.4. As this issue raises an issue of the interpretation and application of the PRPA, a statute, we are guided by the following standard.

---

[1] **Frye v. United States**, 293 F. 1013 (D.C. Cir.1923). Under **Frye**, novel scientific evidence must be generally accepted in the relevant scientific community before it will be admitted. Pennsylvania Courts utilize the **Frye** test. **See Betz v. Pneumo Abex, LLC**, 44 A.3d 27, 30 (Pa. 2012).

[W]e must determine whether the trial court committed an error of law. Our standard of review is *de novo.* When interpreting statutes, our goal is to effectuate the intention of the legislature. We do so primarily by looking to the plain language of the statute. If the language of the statute is clear and unambiguous, we will not disregard it under the pretext of pursuing its spirit.

***Dodson v. DeLeo***, 872 A.2d 1237, 1241 (Pa. Super. 2005) (citations omitted).

The PRPA was enacted to encourage the use of peer review in health care facilities in an effort to ensure high professional standards in the provision of medical care. ***See Piroli v. Lodico***, 909 A.2d 846, 850 (Pa. Super. 2006). Thus, the PRPA seeks to encourage the health care industry to police itself. ***See Dodson***, at 1242. It accomplishes this goal by providing confidentiality provisions for "comprehensive, honest, and potentially critical evaluations of medical professionals by their peers in the profession." ***Young v. The Western Pennsylvania Hospital***, 722 A.2d 153, 156 (Pa. Super. 1998) (citation omitted).

In relevant part, the PRPA provides that

[t]he proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as

immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings.

63 P.S. § 425.4. It is well established that under this provision,

[d]ocuments used in the determination of staff privileges are exactly the type of documents the legislature contemplated when drafting the Peer Review Protection Act. Granting, limiting, or revoking staff privileges is one of the strongest tools the medical profession uses to police itself.

*Young,* 722 A.2d at 156 (citation omitted).

On appeal, the Taylors implicitly concede that the evidence at issue is normally protected by the PRPA. They argue, however, that Dr. DeLeo has waived this protection by publishing the evidence through the filing of a complaint against the involved hospitals for defamation. The trial court found it "absurd" that a physician could be found to waive the peer review privilege by asserting, in a publicly filed document, that the confidential information had been improperly divulged to third parties.[2] Furthermore, the trial court concluded that it was the hospital's answer to Dr. DeLeo's defamation complaint that published the confidential information sought to be used by

_____

[2] Appellee argues that the peer-review privilege is unwaivable. We cannot agree. A civil litigant may waive every right or privilege held by that litigant, so long as the waiver is knowing and voluntary.

the Taylors. The trial court's reasoning mischaracterizes the record in both respects.

In her complaint against the hospital, Dr. DeLeo claimed that the hospital and its agents had defamed her. Her complaint makes a passing reference to the PRPA in paragraph 20, but does not detail in any manner how the hospital violated the PRPA. In contrast, Dr. DeLeo's complaint does detail seven of the nine facts that the Taylors requested to introduce in their pre-trial motion: (1) that Dr. DeLeo applied for reappointment to the medical staff on December 8, 2006; (2) that the hospital's peer review committee voted not to recommend approval of Dr. DeLeo's application; (3) that another hospital committee voted not to extend laparoscopic surgical privileges to Dr. DeLeo; (4) that Dr. DeLeo's membership on the medical staff of the hospital expired on April 3, 2007; (5) that Dr. DeLeo's surgical privileges at the hospital expired on April 3, 2007; (6) that another hospital subsequently denied Dr. DeLeo's application for appointment and surgical privileges; and (7) that Dr. DeLeo did not have a medical staff appointment at any hospital from April 3, 2007 until January 2008.

We therefore cannot agree with the trial court that Dr. DeLeo was attempting to vindicate her rights under the PRPA in filing her defamation suit against the hospital. Nor can we conclude that even a substantial number of the Taylors' requests were only available from the hospital's

answer and new matter. Rather, all but two of the requests concern information revealed in Dr. DeLeo's complaint.

However, we conclude that the trial court did not abuse its discretion in concluding that this evidence was inadmissible pursuant to Pennsylvania Rule of Evidence 403. Under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Pa.R.E. 403. "'Unfair prejudice' supporting exclusion of relevant evidence means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Wright**, 961 A.2d 119, 151 (Pa. 2008) (citation omitted).

> Our standard of review for evidentiary rulings is a narrow one:
>
> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

**Reott v. Asia Trend, Inc.**, 7 A.3d 830, 839 (Pa. Super. 2010) (citation omitted).

The Taylors correctly argue that the requested information has probative value, especially in cross-examination of Dr. DeLeo as a witness. Had she testified as an expert, her lack of staff privileges would have been relevant to her qualifications for expressing any relevant opinion. It is important, however, to note that Dr. DeLeo was not presented as an expert

- 8 -

witness and did not opine on the standard of care at issue. She therefore testified solely as a fact witness, not as an expert. **See Lykes v. Yates**, 77 A.3d 27, 32 (Pa. Super. 2013).

Dr. DeLeo's lack of staff privileges at the time she performed the surgery at issue in this litigation is not relevant to whether she met the standard of care in performing the surgery. **See id**. Therefore, admission of the requested evidence on cross-examination would have posed a grave danger of encouraging the jury to decide on an improper basis. In other words, there was a substantial likelihood of the jury deciding that Dr. DeLeo was a bad surgeon and therefore had committed malpractice in this case, rather than focusing on what Dr. DeLeo had actually done in treating Mrs. Taylor. Thus, it was not an abuse of discretion for the trial court to conclude that unfair prejudice of this evidence substantially outweighed its probative value.

In their second issue on appeal, the Taylors argue that Dr. Pello's testimony violated the **Frye** rule. The Taylors' argument is closely related to the argument that led a prior panel of this Court to reverse and remand. In reversing the first verdict, this Court noted that Dr. Pello testified that "he knew of no cases where a doctor had performed the procedure more than three times, nor of any learned treatise that advocated such an approach." **Taylor v. DeLeo**, No. 188 MDA 2012, at 8 (Pa. Super., filed 1/25/13) (unpublished memorandum) (citation omitted). "Thus, if the Taylors *only*

presented the 'repeated use' theory, the 'two schools of thought' instruction was inappropriate, for as Judge Turgeon and the Taylors agree, it should not apply to multiple uses of the procedure." *Id*., at 11.

Upon remand, the Taylors sought to preclude Dr. Pello from opining that the repeated use of the lysis procedure more than three times was within the accepted standard of care. In particular, the Taylors argued that Dr. Pello's opinion in this regard did not satisfy the *Frye* test as it did not have general acceptance within the relevant medical community. The trial court denied the Taylors' motion, and Dr. Pello was permitted to testify that in his opinion, performing the procedure 13 times on Mrs. Taylor was within the accepted standard of care.

On appeal, the Taylors renew their argument that Dr. Pello's standard of care testimony failed the *Frye* test. The trial court did not explicitly address this issue in its opinion, noting simply that the issue went to credibility and not admissibility. *See* Trial Court Opinion, 3/25/15, at 19.

"[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Commonwealth v. Harrell*, 65 A.3d 420, 430 (Pa. Super. 2013) (citation omitted). The *Frye* test consists of a two-step process, which is as follows.

> First, the party opposing the evidence must show that the scientific evidence is "novel" by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions. If the moving party has identified novel scientific

> evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute.

*Commonwealth v. Foley*, 38 A.3d 882, 888 (Pa. Super. 2012) (citation and internal quotation marks omitted). *See also* Pa.R.E. 702. "However, the *conclusions* reached by the expert witness from generally accepted principles and methodologies need not also be generally accepted." *Tucker v. Community Medical Center*, 833 A.2d 217, 224 (Pa. Super. 2003) (emphasis in original) (citation omitted). In the medical field, reliance upon medical records and personal expertise in diagnosing and treating a patient is a generally accepted methodology. *See Cummins v. Rosa*, 846 A.2d 148, 151 (Pa. Super. 2004).

Here, the Taylors are challenging whether Dr. Pello's conclusion, that performing the procedure 13 times on Mrs. Taylor was within the standard of care, was generally accepted within the medical community. They are correct in noting that the record does not support a finding that this conclusion is generally accepted in the medical community. However, Dr. DeLeo was not required to establish this in order to present Dr. Pello's expert testimony. Furthermore, there is no basis upon which to conclude that reviewing the medical records and relying upon his own personal expertise to reach this conclusion was a methodology not generally accepted in the medical community. Thus, given our prior recognition of this methodology in *Cummins*, we cannot conclude that the trial court abused

its discretion in permitting Dr. Pella to testify as to his opinion that Dr. DeLeo's actions met the standard of care.

In their final argument, the Taylors argue that the trial court erred in precluding them from cross-examining Dr. DeLeo with learned treatises that Dr. Pello conceded were authoritative. The Taylors concede that generally speaking, learned treatises are hearsay and thus are inadmissible as substantive evidence. *See* Appellants' Brief, at 19. However, they argue that learned treatises are admissible to cross-examine a witness, citing *Aldridge v. Edmunds*, 750 A.2d 292 (Pa. 2000). In contrast, Dr. DeLeo argued, and the trial court ruled, that while learned treatises may be appropriate in cross-examining an expert witness, they may not be used to cross-examine a non-expert party defendant pursuant to *Burton-Lister v. Siegel, Sivitz and Lebed Associates*, 798 A.2d 231 (Pa. Super. 2002).

"It is well-settled that the scope of cross examination is a matter within the trial court's discretion and will not be disturbed by this Court absent an abuse of that discretion." *Commonwealth v. Kouma*, 53 A.3d 760, 768-769 (Pa. Super. 2012) (citation and quotation marks omitted). In *Burton-Lister*, this Court highlighted the danger inherent in the "polite fiction" that the use of learned treatises during questioning could be limited to the issue of the credibility of the expert witness. *See Burton-Lister*, at 239. The *Burton-Lister* court noted that the reason that such treatises were admissible at all, their authoritativeness, would tend to influence a jury

to decide that the treatises were proof of the matter asserted therein. ***See id***.

In the present case, the trial court found that Dr. DeLeo had not been qualified as an expert witness, and therefore pursuant to ***Burton-Lister*** the danger of permitting the use of the learned treatises in cross-examining Dr. DeLeo outweighed the limited probative value they might have in assessing her credibility. We cannot conclude that this decision was an abuse of discretion, and therefore conclude that the Taylors' final issue on appeal merits no relief.

Judgment affirmed. Jurisdiction relinquished.

Judge Jenkins joins the memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2016

- 13 -