J-A27002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HAINES & ASSOCIATES, P.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHLAM KHALIL, M.D. | : | |
| | : | |
| Appellant | : | No. 651 EDA 2019 |

Appeal from the Order Entered January 14, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  02463 July Term, 2016

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                          Filed: April 9, 2020

Ahlam Khalil, M.D. appeals from the order that denied her post-trial motion and entered judgment for $46,233 against her and in favor of Haines & Associates, P.C. ("Haines") in this action for unpaid attorney fees.  We affirm.

In 2007, Dr. Khalil's condominium was flooded.  Protracted negotiations with her insurance company as to property damage, other losses, and allegations of bad faith resulted in her insurer offering to pay her $1.5 million to settle all of her claims.  However, the proposed settlement agreement included an indemnification provision that Dr. Khalil refused to accept.  In May 2015, Dr. Khalil retained Haines to negotiate the collateral terms of the agreement with the insurance company to finalize the settlement.

---

[*] Retired Senior Judge assigned to the Superior Court.

Haines sent Dr. Khalil a written contingency fee agreement providing that if it resolved the matter for her prior to the filing of a complaint, its fee would be $400 per hour. The document further indicated that if Haines obtained a recovery for her after a complaint was filed, its potential fees would be capped at $20,000. If Haines was unable to secure any form of recovery, Dr. Khalil would be responsible for no legal fees at all. **See** Amended Complaint, 10/20/17, at Exhibit A. Dr. Khalil did not execute the agreement as drafted, but rather hand-wrote in additional terms before signing and returning it to Haines. Haines maintained that it did not accept the fee arrangement as altered by Dr. Khalil, but it nonetheless continued its representation of Dr. Khalil.

After nearly a year of negotiations, the insurance company persisted in its refusal to omit the objectionable indemnification language, and it threatened to withdraw the settlement offer completely if Dr. Khalil did not promptly accept it. Haines strenuously advised Dr. Khalil to take the $1.5 million. When she refused, Haines unsuccessfully petitioned to have a guardian appointed to make the decision on her behalf. Furious with her attorney's allegations that she was incompetent, Dr. Khalil fired Haines. Haines submitted an invoice to Dr. Khalil detailing its out-of-pocket expenses and 114.11 hours of billable work it had performed on her behalf. Overall, Haines requested a total payment of $46,233. Dr. Khalil declined to pay.

In July 2016, Haines filed a complaint alleging that it was entitled to recover its costs and fees under the competing theories of breach of contract or *quantum meruit*.[1] The case ultimately proceeded to trial, at which Dr. Khalil defended on the basis that the parties had a contingency fee arrangement, and that because the contingency–Haines's resolution of her dispute with her insurance company–never occurred, she owed Haines no fees. The trial court granted Dr. Khalil's motion for a directed verdict as to the *quantum meruit* claim, but the jury ultimately found for Haines on the breach of contract claim and awarded $46,233. Dr. Khalil filed a timely post-trial motion and accompanying memorandum of law. The trial court entered an order establishing a briefing schedule, and the parties complied, although Dr. Khalil

---

[1] As our Supreme Court has explained:

> An action in contract is distinct from one in *quantum meruit* as demonstrated by the disparate measure of damages arising therefrom. Damages in a *quantum meruit* action are limited to the reasonable value of the services performed. Remedies for breach of contract are designed to protect either a party's expectation interest by attempting to put him in the position he would have been had the contract been performed; his reliance interest by attempting to put him in the position he would have been had the contract not been made; or his restitution interest by making the other party return the benefit received to the party who conferred it.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1251 n.6 (Pa. 2016) (internal citations omitted).

filed her brief two days late. By order of January 14, 2019, the trial court denied Dr. Khalil's motion and entered judgment on the jury verdict.

Dr. Khalil filed a timely appeal to this Court, and both Dr. Khalil and the trial court complied with Pa.R.A.P. 1925. Dr. Khalil presents one substantive question for our review:[2] "Did the lower court abuse its discretion when it allowed Haines to introduce evidence of a $1.5 million settlement offer that [Dr.] Khalil had previously rejected where the evidence was irrelevant, and in any event, where its probative value was outweighed by its prejudicial effect?" Dr. Khalil's brief at 3.

We begin with a review of the applicable law.

_____

[2] Dr. Khalil also questions the trial court's position in its Pa.R.A.P. 1925(a) opinion that she waived her issues and this Court should dismiss her appeal because she filed her post-trial motion brief two days late. **See** Dr. Khalil's brief at 6; Trial Court Opinion, 4/9/19, at 4-5. We dismiss the trial court's suggestion out of hand. **See**, **e.g.**, **Carlos R. Leffler, Inc. v. Hutter**, 696 A.2d 157, 166 (Pa.Super. 1997) (holding trial court abused its discretion in finding issues waived where post-trial motion itself was filed a day late and there was no allegation of prejudice; observing that "sanctions such as waiver should be reserved for those instances in which indulgence of a late filing actually works to prejudice the interests of the adverse party or the orderly administration of justice").

Additionally, Haines argues that Dr. Khalil has waived her appellate issues because "there is no evidence in the as-filed appellate record that Dr. Khalil requested a transcript of the trial." Haines's brief at 8. Our review of the record reveals that the transcript must have been ordered prior to the appeal, as a portion of the trial transcript was attached to Dr. Khalil's post-trial motion brief. **See** Post-Trial Motion Brief, 12/20/18, at Exhibit A. Further, the trial transcripts were added to the certified record before this court on October 30, 2019. Thus, we do not lack the necessary record, and also decline to find waiver on that basis.

> When presented with an appeal from the denial of a motion for a new trial, our standard of review is whether the trial court committed an error of law that controlled the outcome of the case or committed an abuse of discretion. An abuse of discretion is not merely an error of judgment; it must be shown that the law was misapplied or overridden, or that the judgment exercised was manifestly unreasonable or the result of bias, ill will, prejudice, or partiality. Moreover, when a party requests a new trial based on the trial court's evidentiary rulings, such rulings must be shown to have been erroneous and harmful to the complaining party. If the evidentiary rulings in question did not affect the verdict, we will not disturb the jury's judgment.

*Cummins v. Rosa*, 846 A.2d 148, 150 (Pa.Super. 2004) (internal quotation marks and citation omitted).

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence may be excluded "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id*. at Comment. "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value and it is not for an appellate court to usurp that function." *Parr v. Ford*

*Motor Co.*, 109 A.3d 682, 696 (Pa.Super. 2014) (internal quotation marks and citations omitted).

Dr. Khalil contends that the dollar amount that the insurance company had offered to settle her claims was irrelevant and inadmissible because it had "nothing to do with any of [the] elements" of Haines's causes of action. Dr. Khalil's brief at 9. The trial court disagreed, accepting Haines's position that, in this action for unpaid attorney fees, the amount at stake in the representation "gave context for how zealously [Haines] worked for [Dr. Khalil] and why [Haines] should be entitled to damages from [her] breach of contract." Trial Court Opinion, 4/9/19, at 13.

Dr. Khalil counters that even if the amount of the settlement offer was relevant and was properly admitted to establish "the 'context' of Haines's representation," it "was more prejudicial than probative." Dr. Khalil's brief at 10. She explains:

> The issue in this case was whether [Dr.] Khalil should have paid money to Haines in exchange for [its] performance that did not result in a settlement. Since the amount of the settlement offer was not the reason [Haines] was hired, this portion of the "context" of [the] representation had little probative value. On the other hand, the fact that [Dr.] Khalil rejected the $1.5 million settlement offer was used to portray her as a greedy person who was likely to shirk her responsibility to pay her lawyers. Indeed, Haines repeatedly made the point that the amount supposedly far exceeded [Dr.] Khalil's actual damages. The truth of the matter is that [Dr.] Khalil's case never settled because Haines failed to sufficiently negotiate the collateral terms [it] was engaged to resolve. The jury lost sight of this fact because the $1.5 million number was constantly referred to in an effort to paint [Dr.] Khalil as unreasonable and greedy.

*Id*. at 10-11 (citations omitted).

In response to Dr. Khalil's contentions, Haines reiterates its relevance-for-context position that the trial court adopted, suggesting that "it was important for the jury to understand that Dr. Khalil's matter was complex in nature and that there was a lot at stake for all of the parties[.]" Haines's brief at 17. Haines further argues that there is no indication that Dr. Khalil was prejudiced: "Dr. Khalil's speculation about nefarious usage of the information (to paint her as 'greedy') is unfounded" and that there is no indication "that the facts influenced the jury in this way." *Id*.

From our review of the record, it is clear that Haines did not merely present the value of the settlement at issue to set the stage for the fact-finder, but rather repeated to the jury *ad nauseum* that Dr. Khalil had been offered $1.5 million dollars to settle her claims against the insurance company. *See*, *e.g.*, N.T. Trial, 11/7/18, at 81-92 (referencing "1.5 million dollars" thirteen times over twelve pages of questioning). Further, we agree with Dr. Khalil that the amount of money offered by the insurance company had little or no probative value as to whether the parties had an agreement that Dr. Khalil breached by refusing to pay Haines for its time. *See*, *e.g.*, *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (indicating the elements of a cause of action for breach of contract are "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages").

However, at the time Haines offered the evidence, it was proceeding in the alternative on a *quantum meruit* theory. One element of such a claim is that "it would be inequitable for defendant to retain the benefit [conferred by the plaintiff and retained by the defendant] without payment of value." ***Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.***, 179 A.3d 1093, 1102 (Pa. 2018) (internal quotation marks omitted). "The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." ***Id***. (internal quotation marks omitted). As this Court has explained:

> *quantum meruit* is an equitable action and principles of fairness should prevail. Depending on the nature of the case, merely multiplying the hourly rate by the number of hours worked may be too narrow of an approach. . . . [D]eciding the reasonable value of an attorney's services requires the court to take into consideration the particular circumstances of the case before it, including the complexity of the litigation and the results achieved:
>
> In the absence of a special agreement, an attorney is entitled to be paid the reasonable value of his services. In addition to the labor and time involved, other factors must be taken into consideration, such as the character of services rendered, the importance of the litigation, the skill necessary, the standing of the attorney, the benefit derived from the services rendered and the ability of the client to pay, **as well as the amount of money involved.**

***Angino & Rovner v. Jeffrey R. Lessin & Associates***, 131 A.3d 502, 511 (Pa.Super. 2016) (citations and internal quotation marks omitted, emphasis added).

- 8 -

Therefore, the relation of the amount of fees sought by Haines to the amount of the settlement it was seeking to secure for Dr. Khalil was indeed relevant to the question of whether the equities warranted Dr. Khalil's payment of the requested $46,233 in fees. In other words, the amount of money offered by the insurance company in its settlement provided valuable context to the parties' actions, which was indeed relevant to Haines's claim sounding in *quantum meruit*. Accordingly, we cannot conclude that the trial court abused its discretion in allowing Haines to offer evidence of the amount of money involved in the case. ***See id***.

Moreover, Dr. Khalil has failed to demonstrate that the trial court abused its discretion in declining to find the probative value of the evidence outweighed by any danger of unfair prejudice. As discussed above, the amount at issue was highly relevant to the equities in the case. Further, Dr. Khalil had a full and fair opportunity to explain that the $1.5 million was offered to resolve not only the property damage resulting from the flood of her condominium, but also claims against the insurance company for its own misdeeds. As such, any potential for confusion or prejudice was minimal. Thus, the trial court's ruling was within its discretion. ***Accord Hammons v. Ethicon, Inc.***, 190 A.3d 1248, 1283 (Pa.Super. 2018), *appeal granted on other grounds*, 206 A.3d 495 (Pa. 2019) ("[A]ll relevant evidence is meant to prejudice a defendant, so exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than

the legal propositions relevant to the case. A trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events." (cleaned up)).

In conclusion, Dr. Khalil has failed to establish that the trial court's evidentiary ruling was erroneous and harmful to her. Thus, no new trial is warranted. *See Cummins*, *supra* at 150. We therefore affirm the order denying her post-trial motion and entering judgment on the jury's verdict.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/20